Helen S. Garrett, as a stockholder of
Edge Moor Iron Company,

*vs.*

Edge Moor Iron Company, a dissolved corporation
of the State of Delaware.

In the Matter of the Petition of
Frank G. Cox and John H. Shively,
Receivers of Edge Moor Iron Company, for Instructions.

*New Castle, July* 22, 1937.

*James H. Hughes, Jr.,* of the firm of Ward & Gray, for the receivers.

*Robert H. Richards* and *Robert H. Richards, Jr.,* of the firm of Richards, Layton & Finger, for preferred stockholders.

*Reuben Satterthwaite, Jr.,* of the firm of Satterthwaite & Foulk, *William S. Satterthwaite, Hugh M. Morris,* and *Ivan Culbertson,* for sundry common stockholders.

THE CHANCELLOR: The provision for payment to the preferred stockholders in event of liquidation, found in paragraph B of the charter, is that they shall receive the par value of their shares "with all unpaid dividends thereon." It is this phrase that gives rise to the controversy.

The preferred stockholders contend that the omission of the company to pay dividends to them since October 1, 1931, must now be repaired out of the assets regardless of whether or not those assets contain surplus above capital, and regardless of whether or not the dividends provided by the charter were cumulative or non-cumulative.

In the view I take of the case, the question of the character to be attributed to the assets, whether they are solely of a capital nature or whether, in view of past book surpluses, they may be treated in equity as representative of surplus, is a question that need not be examined. I shall assume them to be of the character most unfavorable to the preferred stockholders' interests, namely, that the as-

sets are strictly capital assets and have in no wise been built up by net earnings so. as to permit of the presence among them of surplus.

As to the contention of the holders of preferred stock that their right to receive "all unpaid dividends thereon," is unaffected by the circumstance of whether the dividends were cumulative or non-cumulative, it is not necessary for me to express an opinion thereon. This is for the reason that the preferred dividends provided for in paragraph B of the charter appear to me to be cumulative. Whether, therefore, if the dividends were non-cumulative, the result of the case would be the same, may be passed by as not necessary to be considered.

Are the dividends cumulative? It is to be noted in the first place that the dividend is at a fixed rate. If it were at an indefinite rate, as it would be if the expression were such as "at a rate of not exceeding six per centum per annum," the dividends would not be cumulative. *Elkins v. Camden, etc., R. R. Co.*, 36 *N. J. Eq.* 233. The rate here is definite. Furthermore, the surplus or net earnings out of which the dividends are to be paid are not the surplus or net earnings as ascertained in each dividend year. Where such is the case there is room to take the view which was adopted in *Staples v. Eastman's Photographic, etc., Co.*, [1896] 2 *Ch.* 303, and in *Belfast & M. L. R. R. Co. v. Belfast*, 77 *Me.* 445, 1 *A.* 362, viz., that each dividend year stands by itself, and that the right to be paid the stipulated rate for any one year either arises or does not arise according as a fund for the payment exists or not in that particular year, and no later year's earnings or surplus can be resorted to for a prior year's obligation. This logic doubtless supplies the reason for the rather standard form in cumulative stock clauses usually found in corporate charters which, when preferred dividends are declared to be payable out of each year's net earnings, provides further

by express language that if in any year the dividend is not paid, it shall be paid out of the earnings of later years.

In the instant case, as the annual dividend is not restricted for payment to the earnings of each year, there was no occasion to add the usual clause just referred to in order to subject the earnings of later years to the payment of dividends that were passed in previous years.

Here the net earnings and surplus out of which the stipulated dividends were to be paid, were not the net earnings of each year to which each particular annual dividend was allocable. The dividends were chargeable against net earnings and surplus generally, which means for all time. Where such is the charter contract, the authorities are in unison in holding that the stipulated dividend is cumulative and is always payable ahead of dividends on subordinate stock, whenever a lawful fund is available for distribution to stockholders. This proposition is stated by VanFleet, V. C., in *Elkins v. Camden, etc., R. R. Co., supra,* as firmly established. The authorities both American and English support it, as do also the text writers. *West Chester & Philadelphia R. R. Co. v. Jackson,* 77 *Pa.* 321; *Fidelity Trust Co. v. Lehigh Valley R. R. Co.,* 215 *Pa.* 610, 64 *A.* 829, 7 *Ann. Cas.* 613; *Bates v. R. R. Co.,* 49 *Me.* 491; *Hazeltine v. Belfast, etc., R. R. Co.,* 79 *Me.* 411, 10 *A.* 328, 1 *Am. St. Rep.* 330; *Langben v. Goodman,* (*Tex. Civ. App.*) 275 *S. W.* 841; *Webb v. Earle,* L. R. 20 *Eq. Cas.* 556; *Henry v. Great Northern Rwy. Co.,* 1 *DeG. & J.* 606, 44 *Eng. Reprint* 858; *Cary v. Londonderry, etc., Rwy. Co.,* 29 *Beav.* 263, 54 *Eng. Reprint* 628; 1 *Machen, Corporations,* § 551; 7 *Thompson on Corporations,* (3d *Ed.*) § 5336; 12 *Fletcher, Cyclopedia of Corporations,* (*Perm. Ed.*) § 5447. In notes to the text books just cited, may be found cases in addition to those herein cited.

Solicitors for the common stockholders endeavor to eliminate the effect of the foregoing authorities by point-

ing to a clause existing in our statute at the time the Edge Moor Iron Company created its preferred stock and under which the stock was created which they contend, takes this case out of the general rule which those authorities establish. The clause appears in *Section* 13 of the *General Corporation Law* as it existed in 1919 (*Rev. Code* 1915, § 1927, as amended by 29 *Del. Laws, c.* 113, § 7), when the charter was amended so as to authorize the issuance of the preferred stock. That section of the act, after authorizing the creation of two or more classes of stock, provided that,

"* * * * the holders of any preferred stock shall be entitled to receive and the corporation shall be bound to pay thereon dividends at such rates and on such conditions as shall be stated in the certificate of incorporation, or any amendment thereof, payable quarterly, half-yearly or yearly, before any dividends shall be set apart or paid on the common stock; * * * * *and such preferred dividends may be made cumulative* * * *." (Italics supplied.)

It is the italicized clause which the solicitors for the common stockholders point to as making the authorities hereinbefore cited inapplicable upon the point of whether or not the dividends are cumulative. Their argument is this—that the statute under which the stock was created required the certificate of incorporation either in its original form or as amended, to make preferred stock dividends cumulative if it is desired that such shall be their character. Granting that the italicized clause requires that the cumulative character of the dividends shall be made affirmatively to appear in the charter, there is no suggestion in the clause that the word "cumulative" shall be used in the language descriptive of the dividend preferences. Any language which describes with sufficient clarity that the dividends are to be cumulative, no matter what its phraseology may be, satisfies the clause. The language actually employed sufficiently describes the dividends as cumulative according to the authorities hereinbefore cited.

It is further argued that the charter provisions could

not have intended to make the preferred stock dividends cumulative because the redemption clause, paragraph C *supra*, provides that the stock may be redeemed at one hundred and two dollars and fifty cents per share without the payment in addition of any past dividends that were unpaid. If the dividends are cumulative, it is argued, paragraph C would have provided for the payment of arrearages on redemption of the stock. The paragraph not providing for the payment of arrearages, it is argued that such arrearages were never intended to cumulate. This is speculative. All we can do is to take the language as written. Liquidation is one thing, and redemption is another. There is nothing to prevent the corporation from providing that one shall proceed on one basis and the other on another basis. There is no repugnancy between the two provisions. Each is plain in its terms and I can see no reason for allowing one to overturn the clear meaning of the other.

The fact that the two classes of stock are given equal voting rights throws no light, as is contended on one of the briefs, upon whether an inequality in way of a cumulative preference as to dividends was given to the preferred stock.

Having arrived at the conclusion that the preferred dividends called for by the charter of this company are cumulative, and assuming, as I have already stated, the view which is most favorable to the common stockholders, viz., that the fund to be distributed consists solely of capital assets, the case stands in complete parallel with *Penington v. Commonwealth Hotel Construction Corp.*, 17 *Del. Ch.* 394, 155 *A.* 514, 75 *A. L. R.* 1136, decided by the Supreme Court of this State in 1931, except for one feature which I now proceed to notice.

I refer to this—in the *Commonwealth Hotel Case* the cumulative preferred stock was entitled on liquidation to receive in addition to par "all unpaid dividends accrued thereon," while in this case the sum to be paid in addition

to par is "all unpaid dividends thereon." The only difference is the presence in the former of the word "accrued" and its absence in the latter.

Can the absence of the word "accrued" in this case take it out of the principle of *Penington v. Commonwealth Hotel Construction Corp., supra?* I think not. A careful reading of the opinion in the court below in *Penington v. Commonwealth Hotel Construction Corp.,* 17 *Del. Ch.* 188, 151 A. 228, with which the Supreme Court disagreed, and of the opinion of Judge Harrington in his dissent in the Supreme Court, will disclose that the word "accrued" in the court below and in the dissent in the Supreme Court was considered as connoting the idea that the unpaid dividends must have been intended as meaning something payable out of net profits or surplus, before they could be demandable on liquidation. This connotation of the word was rejected as untenable by the Supreme Court as is apparent from the language of Judge Rodney, speaking for the majority, when he said, at page 403 of the report of the case in 17 *Del. Ch.,* 155 *A.* 514, 519, that the word "accrued" means that "these claims for dividends that have grown to the par value of the stock and matured and become due by passage of time."

I cannot find anything in the opinion of the Supreme Court which justifies a differentiation in the principle of this case from the principle of that one. If "accrued" means only that "passage of time" has given rise to a right to receive dividends, it still remains true that dividends that were not paid at the rate specified in the contract for their payment are dividends that are "unpaid." The solicitors for the common stockholders, it seems to me, lay too much emphasis upon that part of the language of the Supreme Court in the *Commonwealth Hotel Construction Case* where the word "accrued" is discussed. The discussion was called for solely in order to demonstrate the error of the court below in deriving from the word "ac-

crued" an intent to associate dividends with the existence of surplus or net profits for their payment. The Supreme Court held that the word had no such connotation and that its sole significance was in its time relation. "Unpaid thereon" is as clearly associated with the passage of time as is "unpaid and accrued thereon."

I conclude, therefore, that this case is governed by the decision of the Supreme Court in *Penington v. Commonwealth Hotel Construction Corp., supra.* Under the principle of that case, all the dividends which were unpaid on the preferred stock should be first paid out of the fund before anything is received by the common stock.

Down to what date are the dividends to be calculated? In *Penington v. Commonwealth Hotel Construction Corp., supra.,* the Supreme Court said that "the answer to this question lies in a large measure, in the agreement entered into by the stockholders through the medium of the Certificate of Incorporation." It seems to me that the court might have said that the answer lies entirely in the terms of that agreement, so long, of course, as it infracted no provisions of law. In the *Commonwealth Hotel Construction Case,* the agreement of the stockholders set no date down to which the dividends should be calculated. The court held that in that situation the agreement was to be construed as applicable to dividends that were unpaid and accrued while the corporation was a going concern, that when receivers in insolvency were appointed who proceeded to liquidate its affairs, it ceased to be a going concern, and that the dividends ceased to accrue from that date. Dividends, therefore, were calculable only to the date of the receivership.

Here, however, the agreement is not silent upon the question. It provides that dividends shall be paid at the stipulated rate down "to the date of such payment," that is to say down to the date when the per share par value

is paid. This is the agreement and there is nothing illegal about it. The unpaid dividends should be paid accordingly.

Let an order be submitted in accordance with the foregoing.