FRANK G. COX, JOHN H. SHIVELY and WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Trustees under item 8 of the Last Will and Testament of William F. Sellers, deceased,

*vs.*

MARY G. SELLERS, ANNA SELLERS COX, FRANK GARDNER COX, JR., WILLIAM SELLERS COX, and WILLIAM SELLERS COX, JR.

*New Castle, November 9, 1942.*

*Charles F. Richards,* of the firm of Richards, Layton & Finger, for complainants.

*Clarence A. Southerland,* of the firm of Southerland, Berl & Potter, for respondents Mary G. Sellers and Anna Sellers Cox.

*Robert H. Richards,* of the firm of Richards, Layton & Finger, for respondents Frank Gardner Cox, Jr. and William Sellers Cox, individually and as guardian *ad litem* of William Sellers Cox, Jr.

THE VICE-CHANCELLOR: The trustees seek instructions whether they should distribute to the life beneficiaries, or retain as trust corpus, all or part of certain monies received by them from the liquidation of a corporation of which they held preferred and common stock. The monies in question represent the amount of dividends on the preferred stock which were accrued and unpaid at the time of liquidation, and which were paid out of the capital of the corporation. The life beneficiaries contend that the entire amount should be paid to them; while the other respondents, to whom I shall refer as remaindermen, assert that the sum should be held as corpus of the trust.

The testator, William F. Sellers, died in June, 1933, a resident of New Castle County. By his will, dated March 28, 1932, he created a trust, the relevant terms of which read thus:

"8. I give and bequeath all of my preferred and common stock of the Edge Moor Iron Company to my trustees hereinafter named and also any bonds or other securities of said company, in case it issues any such securities and I am the owner of them at the time of my death, to hold and to collect the net income therefrom and to pay over one-half of the net income to my wife, Mary G. Sellers, for and during the term of her natural life, and one-half of the net income to my daughter, Anna Sellers Cox, for and during the term of her natural life. Upon the death of my wife all the net income shall be paid to my daughter. I give to my daughter the same power of appointment of the principal of all of said shares by her will as is set forth in the last preceding paragraph hereof, and in default of such appointment I direct that the principal of said shares shall go as provided in said last preceding paragraph. * * * In using the word 'shares' I intend to include any bonds or other securities of said company, if issued, of which I am the owner at the time of my death.

"The above disposition of my shares and any other securities of the Edge Moor Iron Company is subject to the following condition: That under no circumstances shall said trust terminate within ten years after my death, * * *. It is well known to the said trustees that the management of the Edge Moor Iron Company has been the chief work of my life, and I desire them so to control the securities of that company of which I die possessed as will best conserve said investment. To this end, in addition to the powers heretofore given them, I give them full power to join in any changes or adjustments in the capital structure of said company and/or in any reorganization, consolidation or merger and with full voting powers. They shall also have the right to sell the securities of the Edge Moor Iron Company if in their judgment it is deemed wise to do so for cash and/or other securities, and in such case to hold the proceeds under the terms of this trust and to invest and reinvest said securities in first class securities at their discretion without being limited to what may be legal investments for trustees under the laws of the State of Delaware or of any other state, provided, however, that in case the securities of the Edge Moor Iron Company are sold so that my estate has no further interest in that company or in any corporation with which it is merged or consolidated, the said ten year provision shall not apply and said trust shall in such event continue for the respective lives of my wife and daughter, but in case my daughter predeceases my wife, it shall terminate as to one-

half thereon upon the death of my daughter, and as to the remaining one-half upon the death of my wife."

The testator owned, and the trustees received 5385 shares of the preferred stock of Edge Moor Iron Company (out of 5712, the total outstanding), and 1369 shares of common stock (out of 8000, the total outstanding). The corporation had no other classes of stock. The par value of each class was $100 a share. Provisions of the company's amended certificate of incorporation relating to the shareholders' rights to the corporate assets are set forth in *Garrett v. Edge Moor Iron Co.,* 22 *Del. Ch.* 142, 194 *A.* 15, 16. The provisions important here are these:

"The preferred stock shall primarily receive dividends, when and as declared out of the surplus or net earnings of the corporation, at the rate of six per centum per annum, payable semi-annually on the first day of April and October in each year; the dividends on the preferred stock shall be paid or set apart before any dividend shall be paid on the common stock. * * * In the event of any liquidation or dissolution or winding up of the company, whether voluntarily or involuntarily, the holders of the preferred stock shall be paid in full the par value of their shares with all unpaid dividends thereon to the date of such payment before any amount shall be paid to the holders of the common stock."

No dividends were ever paid on the common stock. Full dividends were regularly paid on the preferred, to and including October 1, 1931, but were not thereafter paid by the corporation. In December, 1935 the corporation was dissolved and receivers in dissolution were appointed. The company had had an operating loss for the year 1930 and for every subsequent year of its existence. At the time of dissolution, the corporate books showed that the amount in value of its assets, less liabilities, was insufficient to pay the par value of the preferred stock and accrued dividends thereon, plus the par value of the common stock.

The receivers liquidated the corporate assets and paid to the preferred shareholders the par value of their shares in two installments, $35 per share on July 16, 1936 and $65

on September 18, 1936. In the case of *Garrett v. Edge Moor Iron Co.*, *supra*, affirmed by the Supreme Court under the caption *Pennsylvania Co. for Insurances on Lives, etc., v. Cox*, 23 *Del. Ch.* 193, 199 *A.* 671, it was determined that the preferred shareholders were entitled to receive, in addition to the par value, the amount of unpaid dividends on their stock from October 1, 1931, to the time of payment of the par value of the stock. Pursuant to the decree entered in the cited case, the complainants, as preferred stockholders, received the aggregate sum of $158,480.55, or $29.43 a share, in satisfaction of the preferential right to accrued dividends upon liquidation. This is the fund in dispute here. The receivers distributed to the common stockholders, for each share of their stock, property which was valued for tax purposes at about $17. The common stockholders thus received substantially less than the par value, $100 a share, at which price the common stock had been issued. The source of the payment of the accrued dividends to the preferred stockholders was not earnings of the corporation, but was corporate capital; and the payment reduced the amount of assets available for the common stockholders as a return of their capital contribution.

All parties agree that the intent of the testator must control whether the trustees should pass on to the life beneficiaries, or retain as part of the trust corpus, the amount of the accrued dividends on the preferred stock. The testator did not provide specifically for the situation. He expressed the intent that "net income" of the trust should be paid to the life beneficiaries, and that the trust corpus should be retained for distribution to others. Accordingly, the question presented may be stated thus: Was the fund representing accrued dividends on the preferred stock income of the trust? The life beneficiaries take the position that it has the requisite attributes of trust income. They insist that it is a distribution made in fulfillment of the corporate contract to assure payment of cumulative divi-

dends to the preferred stockholders; and that the right to such dividends is in its very nature a right to income, or to a return upon the investment represented by the preferred stock.

On the other hand, the remaindermen contend that the fact that the source of the fund was capital of the corporation determines the disposition which the trustees must make of it; that the established Delaware rule of allocation of corporate distributions dictates that all distributions which represent corporate capital must be held as trust corpus, and that only distributions representing net earnings of the corporation may be paid out to the life beneficiaries. The remaindermen rely upon *Bryan, et al., v. Aiken, et al.,* 10 *Del. Ch.* 446, 86 *A.* 674, 46 *L. R. A.* (*N.S.*) 477; *duPont, et al., v. Peyton, et al.,* 15 *Del. Ch.* 255, 136 *A.* 149, and *Ortiz, et al., v. Fidelity-Philadelphia Trust Co., et al.,* 18 *Del. Ch.* 439, 159 A. 376.

In the *Bryan* case, it was held that a certain stock dividend on common stock held by a trustee was a distribution of corporate earnings and, therefore, should be transmitted by the trustee to the life beneficiaries of the trust. The rule adopted is stated in the opinion, as follows (10 *Del. Ch.* 472, 86 *A.* 685, 46 *L. R. A.* (*N.S.*) 477):

"* * * all net earnings, however, they may have been treated or used by the corporation during their accumulation, and regardless of the period during which they have accumulated, if declared as dividends out of net profits during the life tenancy, are given to the life tenant when declared, whether such dividends are made in cash or capital stock, provided that the principal of the trust is not diminished thereby."

In holding that the form of dividend, whether in cash or capital stock, is unimportant, the court said (10 *Del. Ch.* 471, 86 *A.* 685, 46 *L. R. A.,* (*N.S.*) 477):

"It might be that a corporation would, for reasons deemed proper and sufficient, pay all net earnings through the medium of stock dividends, and declare no cash dividends at all during the continuance of the trust. It cannot for a moment be supposed that the testator, in

creating the trust, contemplated that the person for whom he sought to provide for life should be impoverished because of the name or form in which the dividend was declared. It is much more reasonable to suppose that he contemplated that all dividends, no matter what they are called, which represented the capital of the corporation would go to the remaindermen, and all dividends, by whatever name, which represented net earnings, would go to the beneficiary for life. * * *"

In the *duPont* case, Chancellor Wolcott reiterated the principle that "the destination of the distribution is determined by the nature of its source." [15 *Del. Ch.* 255, 136 *A.* 157.] He commented that the language of the opinion in the *Bryan* case is expressive of the general principles which must be regarded in determining controversies between life tenants and remaindermen with respect to corporate distributions.

In the *Ortiz* case, the Supreme Court approved and followed the *Bryan* and *duPont* cases.

The controlling effect of these authorities is not to be questioned. However, this does not avoid the necessity of examining the reasoning and context of verbal expressions in the opinions, in order to determine the scope of the principles enunciated and their applicability to the present situation.

It is apparent from the *Bryan* case that the purpose of the rule adopted is to give effect to the dual intent of the testator or settlor in this kind of trust: (1) to benefit the life beneficiaries by payments to them of trust income; and (2) to preserve the corpus for the ultimate direct benefit of the remaindermen, and also for the indirect benefit of the life beneficiaries resulting from the maintenance of the fund as a source of continuing income to them during the entire period of their interest in the trust. In the opinion, Chief Justice Pennewill said, 10 *Del. Ch.* 471, 472, 86 *A.* 685, 46 *L. R. A.* (*N.S.*) 477:

"The rule adopted should not only be legal, but also broad and equitable. It should be convenient and practicable, and at the same time just and fair to both the life tenant and remaindermen. As far

as possible it should carry out the intention of the testator. We believe the doctrine herein approved, and acted upon, reasonably meets all of these requirements."

In that case and in the *duPont* and *Ortiz* cases, the distributions under consideration had been made to trustees as holders of common stock, that is, stock conferring rights to participate in the corporate earnings and capital without a maximum limit upon the amount of such participation. In the instant case, we are concerned with a distribution made to trustees as holders of preferred stock, having only limited rights of participation in corporate earnings and capital. Hence, it is important to consider whether the application of the rule stated in the earlier cases is affected by the basic differences between the rights conferred by common stock of the character involved in those cases, and the rights incident to the kind of preferred stock with which we are now dealing. Let us examine some of the differences and their consequences, particularly with reference to accrued dividends on preferred stock paid upon liquidation.

The holders of such common stock have rights of participation in (are entitled to receive by means of proper distributions prior to or upon complete liquidation) all of the corporate assets whether representing earnings or capital, excepting only the amount necessary to discharge prior claims, such as indebtedness or preferences of any other classes of stock. In contrast, the holders of preferred stock of the kind involved here have participation rights in only a limited amount of corporate earnings, and a limited amount of capital, after the discharge of prior claims. Any remaining assets after the satisfaction of the rights of the preferred stockholders upon liquidation constitute corporate earnings or capital in which only the common stockholders have participation rights.

Accrued dividends on the preferred stock are payable primarily out of corporate earnings or surplus. However, upon liquidation, if accumulated earnings are insufficient

for this purpose; the dividends are payable out of corporate capital to the extent of such insufficiency. *Penington v. Commonwealth Hotel Constr. Corp.,* 17 *Del. Ch.* 394, 400, 155 *A.* 514, 75 *A. L. R.* 1136. Thus, upon liquidation, the preferred stockholders may receive an amount of capital in addition to the par or fixed liquidation value of their stock. Their right to receive any such additional capital depends upon the previous omission or failure of the corporation to pay dividends on their stock, and upon the non-availability of corporate earnings with which such dividends can be paid. The measure of the amount of any additional capital to which they may be entitled is the amount of the accrued unpaid dividends. Whether upon liquidation they actually receive payment of accrued dividends out of capital, assuming that they have a right to them on the grounds stated above, depends, of course, upon whether there is corporate capital available to pay such dividends.

The common stockholders, being entitled upon liquidation to all corporate capital remaining after the satisfaction of prior claims, have no corresponding limit upon, or measure of, the amount of capital which they have the right to receive. Neither previous distributions of earnings to the common stockholders, nor the availability of earnings for further distribution to them has any effect upon the amount of capital which they have the right to receive. The amount of capital which they may actually receive depends solely upon how much capital remains after the satisfaction of prior claims.

Let us assume that a corporation has a given amount of capital in which its common stockholders have participation rights. After any distribution of such capital to the common stockholders, there remains a lesser amount of capital for further distributions to them, than if the distribution had been made out of available corporate earnings. This is self-evident, for the amount of capital existing before the distribution would be untouched if earnings were dis-

tributed, and the common stockholders' participation rights in the capital would be unchanged.

But after a distribution of corporate capital in payment of accrued dividends to the preferred stockholders, it does not necessarily follow that there will remain a lesser amount of capital for further distributions to them, than if the dividends had been paid out of available earnings. If the corporate capital is not thereby reduced below the amount required to pay the par value of the stock, then there will remain the same amount of capital for further distributions to them, whether the accrued dividends be paid out of capital or earnings. Again, if the par value of the stock has already been paid to the preferred stockholders upon liquidation, they are entitled to no further distributions of capital after the discharge of their right to accrued dividends, whether these dividends be paid out of capital or earnings. For example, in the present case, the preferred stockholders received upon liquidation the total sum of $129.43 per share, paid out of corporate capital. $100 per share was distributed in payment of the par value; and later, $29.43 per share, in discharge of accrued dividends. Having previously received the amount of the par value, the preferred stockholders were entitled to nothing more after the payment of the accrued dividends, whether the source of the dividend payment was capital or earnings. If the receivers had first paid the accrued dividends out of capital and had reserved sufficient capital to return the par value, the amount of capital remaining for further distribution to the preferred stockholders would have been the same as though the dividends had been paid out of earnings, for the preferred stockholders would have been entitled to the par value, $100 per share, no more and no less, without regard to the source of the dividend payment. The actual payment of dividends out of capital did not diminish capital to which the preferred stockholders were otherwise entitled, but rather reduced capital to which the common stockholders

would have been entitled if dividends on the preferred stock had been paid out of available earnings.

Thus, there is a definite relation between the source of corporate distributions to common stockholders and the amount of corporate capital in which such stockholders may otherwise participate (i. e., by other distributions). That relation may be stated thus: the amount of capital in which the stockholders may otherwise participate will be less if a given distribution is made out of capital, than if it is made out of earnings. The same relation exists in the case of a distribution to preferred stockholders, which is in satisfaction of their right to a return of the par value of their stock, or which, although paid out as a dividend, has the effect of impairing the capital necessary to return the par value of their stock. But there is no such relation where accrued dividends on the preferred stock are paid out of capital without prejudicing a return of the par value.

The earlier Delaware cases state the rule to be that where a trustee holds shares of stock in trust for life beneficiaries and remaindermen, the nature of the source of a corporate distribution determines its destination after it is received by the trustee. As previously noted, the court, in each case had before it distributions made on account of common stock. In each case, the relation between the source of the distribution and the amount of corporate capital in which the trustee-stockholder might otherwise participate was as stated above. But here, since the par value of the preferred stock had previously been paid, that relation did not exist when the accrued dividends were paid out of capital. Hence, if the accrued dividends were transmitted to the life beneficiaries of this trust (as they would be if they had been paid out of corporate earnings), the amount of trust corpus would be the same as though the dividends had been paid out of available earnings.

It is indicated in the *Bryan* and *duPont* cases that the rule of allocation, as applied to distributions on account of

common stock, serves the primary function of preserving the trust corpus unimpaired, and the further function of augmenting corpus by amounts distributed which represent accretions to corporate capital, that is, increases in corporate assets resulting from factors other than earnings, such as enhancement in value of capital assets, good will, etc. Any argument that the accrued dividends in the instant case must be retained in order to prevent impairment of the corpus represented by the preferred stock is manifestly untenable (unless it be arbitrarily assumed that the dividends, when received, became a part of the corpus). The payment of dividends out of corporate capital did not diminish any capital which the trustees, as preferred stockholders, would have been otherwise entitled to receive, if the dividends had been paid out of available earnings. Nor is there an analogy between distributions to common stockholders which represent accretions to corporate capital, and distributions of capital to the preferred stockholders in payment of accrued dividends. The preferred stockholders, in contrast with the common, are not entitled to any additional property because of the existence of accretions to corporate capital, but have participation rights in a limited, monetary amount of capital only. The capital distributed in payment of the accrued dividends did not represent accretions to corporate capital, but the existence or non-existence of such accretions would not affect the preferred stockholders' rights.

As appears from Judge Rodney's able discussion of dividends on preferred stock in *Penington v. Commonwealth Hotel Constr. Corp., supra,* the right to such dividends is inherently a right to income upon the investment represented by the preferred stock. The corporate source from which they may be paid does not change their character as income from the standpoint of the preferred stockholders, so long as capital sufficient to pay the par value of the stock is not diminished. The capital used to pay accrued dividends on preferred stock, without prejudicing a return of the par

value, but solely in reduction of property otherwise distributable to the common stockholders, has no logical connection with trust corpus represented by the preferred stock. Such a capital distribution appears rather to be trust income, for it is but a substitute for dividends payable out of surplus or net earnings, which dividends, if so paid, would undeniably constitute trust income.

From the foregoing, it is plain that the kind of capital distributions involved here differ substantially and radically from the kind of distributions dealt with or discussed in the earlier Delaware cases relating to allocation between life beneficiary and corpus. It is likewise evident that accrued dividends paid out of capital were not considered by the court in any of the cases. In the *Bryan* case, Chief Justice Pennewill said that the rule of allocation adopted should, and did, meet the requirements, among others, of being "broad and equitable" and "just and fair to both the life tenant and remaindermen", and that "As far as possible it should carry out the intention of the testator." Here, the life beneficiaries received no income from the trust for more than three years after it was created. During this time, dividends accrued on the preferred stock held by the trustee. If such dividends had been paid by the corporation out of available earnings, the life beneficiaries would have been entitled to them. The failure of the corporation to pay them deprived the life beneficiaries of trust income; but it deprived the trust corpus of nothing. Upon liquidation, the trustees received a distribution made for the sole and specific purpose of paying the accrued dividends. This was in addition to payment of the par value of the stock, which is all that could be claimed for trust corpus on account of the preferred stock if the dividends had been paid out of earnings. To allocate the dividends to trust corpus would, therefore, seem arbitrary, inequitable and unfair to the life beneficiaries. Indeed, it is unthinkable that the testator intended that this special kind of distribution of corporate

capital should augment the corpus at the expense of the life beneficiaries, in the absence of some detriment to corpus resulting from the treatment of the dividends as trust income. The allocation of preferred dividends to corpus, in situations of the character presented here, would certainly fail to meet the requirements of the rule of allocation as stated in the Bryan case. This fact indicates that the present distribution is not within the scope of the rule of that case.

Of the authorities consulted, the case of *In re Fisher's Estate,* (Pa.) 26 A. 2d 192, is nearest in point. It supports the position taken by the life beneficiaries, that a distribution in discharge of preferred stockholders' preferences to accumulated dividends, made out of the portion of corporate capital otherwise allocable to the common stockholders, and without prejudicing a return of the par value of the preferred stock, should be treated as trust income. Although the Delaware rule of allocation between life tenant and remainderman differs in some respects from the Pennsylvania rule, the differences do not, in my view, lessen the persuasiveness of the *Fisher* case as an authority for the proposition for which it is here cited. (A number of Pennsylvania cases showing the development and application of the rules of allocation in that jurisdiction are listed and discussed in an article by Robert Bridgham, Esq., in 85 *Univ. of Pa. Law Rev.* 358.)

Because of the nature of the distribution and of its consequences with respect to further participation in corporate capital, I am impelled to conclude that preferred stock dividends paid out of capital upon liquidation, without impairing the return of the par value of the stock, are not within the scope of the rule of allocation of distributions of corporate capital to trust corpus. That conclusion seems to me consistent with the fundamental principles of reason which underlay the decisions in the earlier Delaware cases. As to any statements in the opinions which, when considered apart from the facts of the cases, may appear to be incon-

sistent, the following language of Chancellor Wolcott in *Penington v. Commonwealth Hotel Constr. Corp.*, 17 *Del. Ch.* 188, 198, 151 *A.* 228, 233, is especially appropriate:

"* * * to wrest a sentence or clause of the opinion from its entire context and give it an application to the instant case where a totally different set of facts and an entirely different problem is presented, would constitute an unwarranted use of the court's language. Judges ought not to be expected to hedge every word they utter with a cautionary and tedious repetition of the limitations which the facts and other expressions in their utterances evidently impose."

At the death of the testator in 1933, no dividends on the preferred stock had been paid for over a year. The bill of complaint suggests an apportionment to corpus of so much of the total sum received as represents dividends accumulated and unpaid at the testator's death. In support of this contention, it may be argued that distributions made in satisfaction of rights of participation in the corporate assets, which rights existed at the inception of the trust, should be held as corpus; and that the accrued dividends at the date of the testator's death were a fixed measure of the preferred stockholders' participation rights comparable in character to the right to receive the par value upon dissolution. This argument, while plausible, is not supported by the authorities. On this point, both the life tenant and remaindermen are in accord. As I understand the theory of the cases, it is that the existence of accumulated dividends does not create a debtor-creditor relationship between the corporation and the preferred stockholders; that the right to accrued dividends is merely a preference as against the common stockholders; that the right to receive such dividends does not come into existence until their payment is properly authorized and directed by declaration, or otherwise; that it is reasonable to assume that the testator intended that accumulated dividends when paid during the life tenancy would inure to the life beneficiaries. *In re Fisher's Estate, supra; Thompson v. New York Trust Co.*, 107 *Misc.* 245, 177 *N. Y. S.* 299; *Boston Safe Deposit &*

*Trust Co. v. Adams,* 219 *Mass.* 175, 106 *N. E.* 590; 1 *Restatement of the Law of Trusts,* § 236, *Comment o.* The rule of these authorities will be followed here.

The remaindermen urge that wholly apart from rules designed to discover intent not expressly stated, the will of Mr. Sellers discloses his intent that the entire sum received as accumulated dividends should be retained by the trustees as corpus. They point out that the testator made other gifts to or for the benefit of the life beneficiaries of this trust; that he created a separate trust of the Edge Moor Iron Company stock and stated his desire that the trustees should so control the securities of that company "as will best conserve said investment"; that he authorized the trustees to sell the stock and directed them to hold as corpus the proceeds of any such sale. The remaindermen argue that the testator was aware of the circumstances surrounding the corporation, that it had been losing money since 1930, that some change in the organization or capitalization was probable, and that upon liquidation there would be distributable out of any available fund the amount of unpaid dividends on the preferred stock. They contend that the testator intended the trustees to hold in trust the cash or securities which they might receive upon any reorganization of the company or other disposition of the stock; that the surrender of the preferred stock in the liquidation proceedings was equivalent to a sale to the corporation, and this particularly in view of the circumstances that the trustees held the balance of voting power and voted in favor of the dissolution. The fact is, of course, that the trustees did not sell the stock, nor did the testator direct that in the event of liquidation all property received by the trustees should be retained as corpus. That he did not so direct, although he provided expressly for the case of a sale, is some indication that he intended a difference in treatment of the proceeds in the two situations. The problem presented and the considerations involved in case of a sale are different from

those which arise upon a liquidation. Generally speaking, even in the absence of express directions in the will, the entire proceeds of a sale of trust property, including any profits realized, or capital gains, must be held as corpus. Compare *In re Houston's Will,* 19 *Del. Ch.* 207, 165 *A.* 132. But notwithstanding this, the argument of the remaindermen fails to accord sufficient weight to the definitely expressed intent to give to the life beneficiaries the net income of the trust. None of the circumstances mentioned seems to me sufficient to overcome this expressed desire so as to require the augmentation of corpus by what is plainly trust income, whether received during the existence of the corporation or upon its dissolution.

One further question remains to be disposed of. Since the trustees held common as well as preferred stock of Edge Moor Iron Company, the payment of the preferred dividends out of corporate capital necessarily decreased the amount of capital which the trustees would have received on account of the common stock, if the preferred dividends had been paid out of available earnings. It was suggested in the briefs and at the argument, that the amount of such diminution of capital distributable on account of the common stock, approximately $28,750, might reasonably be allocated to trust corpus. For the present, I shall not pass upon this question, but the solicitors will be afforded an opportunity to argue it separately, before the final decree is entered. Subject to the future determination of the disposition of this portion, the trustees should be instructed to pay over to the life beneficiaries the monies representing the accrued dividends on the preferred stock.

A decree accordingly will be advised.