[No. 22130. Department One. March 17, 1930.]

RACHEL AUSTIN, *Respondent,* v. JOHN B. WRIGHT, *as Administrator, Appellant,* O. K. GARAGE & REPAIR SHOP, INCORPORATED, *et al., Defendants.*[1]

[1] Reported in 286 Pac. 48.

*Robert A. Devers,* for appellant.

*G. E. M. Pratt* and *L. A. W. Stephan,* for respondent.

TOLMAN, J.—This is an action to foreclose a pledge of certain common corporate stock. From a decree of foreclosure as prayed for, this appeal is prosecuted. The facts, so far as presented by the record which is before us, are practically undisputed. It appears that in March, 1920, the defendant O. K. Garage & Repair Shop, Inc., purchased from John E. Austin and Rachel Austin, his wife, certain real estate at the agreed price of $9,400, the purchase price to be paid by the issuance to the Austins of 940 shares of its preferred stock, which, as appears from the certificate in evidence, was dated March 4, 1920, to run for twenty years from the date of issuance with a guaranteed annual dividend of eight per cent, payable semi-annually, the interest to be cumulative.

Before the Austins would accept this preferred stock in payment, they required and obtained from the defendant Robert J. Miller his personal undertaking that the interest or dividends on the preferred stock certificate evidencing the 940 shares issued to the Austins would be paid in accordance with the terms thereof "until such date as the same is redeemed by said corporation." This contract was in writing, signed by the parties and, as security for its performance, Miller assigned to and delivered to the Austins, as a pledge, a certificate for 800 shares of the common stock of the corporation. The written contract entered into by Miller provided:

"That the party of the first part does hereby guarantee the payment of the interest or annual dividend on said preferred stock certificate No. 6 for 940 shares of the O. K. Garage & Repair Shop, Inc., issued to

John E. Austin on the 4th day of March, 1920, in accordance with the terms thereof, until such date as the same is redeemed by said corporation, and as security for the payment of the same does hereby pledge to party of the second part certificate No. 4 of the common stock of the O. K. Garage & Repair Shop, Inc., for 800 shares, issued to Robert J. Miller on the 14th day of January, 1920.

"It is expressly agreed that time is the essence of this contract and in case of the failure of the O. K. Garage & Repair Shop, Inc., or the party of the first part to pay the interest or annual dividend on the said certificate of preferred stock for 940 shares held by the party of the second part, as hereinbefore set out, in accordance with the terms contained in said certificate, until such date as the same is redeemed by said corporation, this contract shall be forfeited and terminated at the election of the party of the second part, and the party of the first part shall forfeit said certificate No. 4 of the common stock of said O. K. Garage & Repair Shop, Inc., for 800 shares, and the same shall become the absolute property of the party of the second part in full satisfaction and liquidation of all claims which he may have against first party by reason of nonpayment of interest or annual dividend," etc.

Miller subsequently sold this pledged common stock to one Carl A. Rotter, the written assignment containing a specific provision that the sale was made "subject to the prior contract with John E. Austin." The dividend or interest on the preferred stock was paid for the first year after its issuance, only. Whether it was paid by the corporation or by Miller, does not appear from this record. No other or further dividends have ever been declared or paid on the preferred stock. Thereafter John E. Austin died and respondent Rachel Austin became the administratrix of his estate, which was finally closed before the bringing of this action; and in the decree of final settlement, all of the assets

of the estate were distributed to respondent, Rachel Austin.

Some contention seems to be raised to the effect that Rachel Austin, as administratrix, during the course of settlement of her husband's estate, might have prosecuted this or a similar action. There is nothing in the record here to show whether she made any attempt to do so, and we know of no reason why she should have been compelled to foreclose the pledge at that time rather than later.

The other questions raised by the appellant seem to be substantially as follows: That the corporation, by its preferred stock certificate, unconditionally guaranteed to pay dividends whether out of profits or not, and that that provision is invalid. That being true, Miller guaranteed the performance of an illegal contract and since the principal was not bound by the contract, neither is the surety: Or, in the alternative, if the provisions of the stock certificate are valid, nevertheless, there was no liability on the part of the corporation to pay dividends unless earned, and therefore there could be no liability on the part of Miller, the guarantor, without proof that dividends were earned and wrongfully withheld:

Under the authority of our statute and the case of *Jorguson v. Apex Gold Mines Co.,* 74 Wash. 243, 133 Pac. 465, 46 L. R. A. (N. S.) 637, it seems beyond question that, notwithstanding the terms of the certificate, the corporation could only pay dividends out of profits. But that being true, the language of the certificate would be construed to be a guaranty of payment only in the event that dividends are earned. 14 C. J. 419, § 576; *Lockhart v. Van Alstyne,* 31 Mich. 76.

The general rule seems to be that the only effect of the guaranty of dividends, if dividends are not earned,

so far as the corporation is concerned, is to make the dividends cumulative. 7 Thompson on Corporations, § 5337; 14 C. J. 421, § 578.

█ Whether dividends were earned or not, the record does not show, though there is undisputed testimony that no dividends were ever declared or paid, but assuming that none were earned, it does not by any means follow that Miller is thereby released or that his contract is unenforceable. Appellant's argument upon this phase of the case follows the theory of the relation of principal and surety, or in other words, it assumes that Miller became simply a surety for the corporation; but that is not the Miller contract as we read it. To the contrary, the Miller contract is an original undertaking on the part of Miller, notwithstanding the use of the term guaranty, by which he bound himself, by an original undertaking, to see that the Austins received their income. As is said in 28 C. J. 892, § 8:

"Although one of the meanings of the word 'guaranty' is 'indemnify' or 'save harmless,' and the word 'guaranty' may be used to create an obligation to indemnify one against loss, there are important differences between a contract of guaranty and one of indemnity. A guaranty being a collateral undertaking presupposes some contract or transaction as principal thereto; while a contract of indemnity is original and independent, to which there is no collateral contract and with respect to which there is no remedy against the third party. . . ."

In *Crook v. Scott*, 65 App. Div. 139, 72 N. Y. Supp. 516 (affirmed in 174 N. Y. 520, 66 N. E. 1106), a similar undertaking, though oral, was held binding. It is there said:

"Upon acquiring this stock the plaintiff acquired no right to 8 per cent dividends from the corporation. It was under no obligation to pay her any dividends

until such dividends should be duly declared. The agreement, therefore, was not one to answer for the debt, default, or miscarriage of the corporation, but was clearly an independent agreement by the defendants by which they assumed and agreed to pay a sum of money which would be sufficient to make the dividends declared by the company equal to 8 per cent upon the stock. There is not, directly or indirectly, any debt or obligation of the corporation that the defendants agreed to answer for.''

See, also, cases annotated in 24 A. L. R. 986; *Peterson v. Nelson,* 77 Mont. 539, 252 Pac. 368; *Kenigsberg v. Reininger,* 159 Iowa 548, 141 N. W. 407; Cook on Corporations (8th ed.), Vol. IV, § 775.

■ Appellant seems also to contend that the long period of delay in enforcing the pledge was a practical construction of the contract by the parties or, at least, constituted laches. Since Miller's contract was to run for a period of twenty years, it would not do to hold that the pledgee must act and, by acting, exhaust his remedy the moment the first default occurred. He might well wait until the arrearages were sufficient to exhaust the value of the stock pledged and we find nothing in the record to justify holding that he did otherwise.

■ Next, it is urged that the action is barred by the statute of limitations, but this is a continuing contract to be effective until the preferred stock should be redeemed by the corporation which issued it, and the trial court limited the recovery to the period of six years immediately preceding the commencement of the action.

■ Lastly, it is strenuously contended that, if the judgment was right in respect to the matters which we have been considering, then in equity appellant should be subrogated to respondent's right to receive future dividends from the corporation.

Passing the fact that the right of subrogation was not pleaded and was raised for the first time when the trial court announced his decision, a complete answer seems to be that, if Miller's liability was an independent, primary obligation of indemnity, as we have already held, then the doctrine of subrogation does not apply.

"Subrogation is allowed only in favor of one who under some duty or compulsion, legal or moral, pays the debt of another; and not in favor of him who pays a debt in performance of his own covenants, for the right of subrogation never follows an actual primary liability, and there can be no right of subrogation in one whose duty it is to pay, or in one claiming under him against one who is secondarily liable, or not liable at all. In such cases payment is extinguishment." 37 Cyc. 374.

"It is accordingly the universal rule that the right of legal subrogation need not rest upon any formal contract or written agreement, nor does it follow from any fixed law; but it exists on principles of mere equity and benevolence, and is founded on the relationship of the parties. However, it is only in cases where the person advancing money to pay the debt of a third person stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity substitutes him in the place of the creditor, as a matter of course, without any agreement to that effect. . . ." 25 R. C. L. 1316.

So here, by the judgment, appellant pays his own debt and not the debt of another, and is not entitled to subrogation.

We find no error and the judgment is affirmed.

MITCHELL, C. J., PARKER, BEALS, and MILLARD, JJ., concur.