JOHN GASTON & others, trustees, *vs.* KIDDER PEABODY ACCEPTANCE CORPORATION.

Suffolk. December 13, 1933. — February 15, 1934.

Present: RUGG, C.J., PIERCE, DONAHUE, & LUMMUS, JJ.

*Contract,* What constitutes, Construction. *Corporations,* Dividend: cumulative; Retirement of preferred stock.

The agreement of association of a corporation provided for the issue of a preferred stock which entitled the holders to cumulative dividends payable on May 1 and November 1 and which, at the option of the holder, might be retired at the price of par "plus accrued and unpaid dividends to date of redemption" under such conditions as the board of directors might "prescribe at the time or times of issue, but not upon less than eighteen months' notice thereof." In issuing such stock, the directors voted, that it "may at the option of the holder be retired on any dividend date at a price of par plus accrued and unpaid dividends to the date when so retired, but upon not less than eighteen months' written notice to the company by the stockholder of his intention to take advantage of this provision." On September 16, 1930, certain holders of the stock gave the required notice, which

called for retirement on May 1, 1932. In a suit in equity brought in October, 1931, by holders of another class of stock, an injunction was entered restraining the retirement *pendente lite.* A letter from the corporation's president to preferred stockholders stated that fact and that "in the meantime, the redemption . . . has been held up." On April 11, 1933, the injunction was dissolved by a decree dismissing the bill, and on the same day the preferred stockholders who had given notice were informed that the corporation was ready to pay for their stock at par plus dividends accrued to May 1, 1932, and that sum was paid. One of such stockholders by an action sought also a dividend which he alleged had accrued for the period from May 1, 1932, to April 12, 1933. *Held,* that

(1) The contract whereby the corporation agreed to pay for the plaintiff's stock upon retirement after notice was completed when its offer, irrevocably made when the stock was issued, was accepted by the delivery and receipt of the required notice given by the plaintiff; and the rights of the corporation and of the plaintiff then became vested;

(2) The letter of the defendant's president announcing to the preferred stockholders the issuance and effect of the injunction *pendente lite* did not operate to change the provisions of that contract.

(3) The vote adopted by the directors of the defendant at the issuance of the plaintiff's stock, that it might be retired "at a price of par plus accrued and unpaid dividends to the date when so retired," was an agreement to pay the price determined as of the date when the stock was to be retired under the terms of the contract, and not a price to be ascertained when the stock was in fact retired: the phrase therein, "when so retired," referred to the phrase in the same vote, "may . . . be retired on any dividend date";

(4) The corporation performed its full duty in paying dividends only to May 1, 1932.

CONTRACT. Writ dated May 20, 1933.

In the Superior Court, the action came on to be heard by *Qua,* J., upon the pleadings and an agreement as to facts; and he reported it without decision for determination by this court. Material facts are stated in the opinion.

*J. Noble,* for the plaintiffs.

*R. G. Dodge,* for the defendant.

PIERCE, J. This case is an outgrowth of the decision in *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass. 367, and is reported under G. L. (Ter. Ed.) c. 231, § 111, "without decision upon the pleadings and agreement as to facts" by a judge of the Superior Court "for consideration and determination of the full court."

The plaintiffs, who formerly held eighty shares of class B

preferred stock of the defendant, bring this action in contract to recover a dividend alleged to have accrued between May 1, 1932, and April 12, 1933, on which later date the stock was redeemed. The following is a brief summary of the facts agreed: The capital stock of the defendant consisted of class A preferred stock, class B preferred stock, second preferred stock and common stock, the par value of each class being $100 per share. The agreement of association (as amended) contained the following paragraph: "The whole or any part of the Class A preferred stock and the whole or any part of the Class B preferred stock may be redeemed at the option of the Board of Directors on any semi-annual dividend date upon thirty (30) days' notice by the payment therefor of the par value plus accrued and unpaid dividends to date of redemption, and in case a part only of the Class A or the Class B preferred stock is redeemed the same shall be determined by lot. The Class B preferred stock may also, at the option of the holder, be retired at the said redemption price under such conditions as the Board of Directors may prescribe at the time or times of issue, but upon not less than eighteen (18) months' notice thereof." With respect to dividends the agreement of association provided as follows: "The preferred stock, Class A and Class B, shall be entitled out of the net profits and earnings as determined by the Board of Directors to preferential cumulative dividends, payable semi-annually on the first days of May and November in each year, at the rate of five (5) per centum per annum and no more on the Class A preferred stock, and at such rate or rates on the Class B preferred stock as shall be fixed by the Board of Directors at the time or times of issuance thereof." On March 29, 1922, the directors voted to issue twenty-four thousand shares of class B stock at $100 per share; at the same time they fixed six per cent as the rate for dividends on the class B preferred stock and passed the following vote with respect to the conditions upon which it might be retired: "Voted: That 24,000 shares of Class 'B' Preferred stock may at the option of the holder be retired on any dividend date at a price of par plus accrued and unpaid

dividends to the date when so retired, but upon not less than eighteen (18) months' written notice to the company by the stockholder of his intention to take advantage of this provision." On December 28, 1927, the directors voted to issue eighteen thousand seven hundred fifty shares of class B preferred stock for cash at $100 per share plus accrued dividends to January 13, 1928, subject with respect to dividends and retirement to the same conditions as the twenty-four thousand shares previously issued. No dividends were paid on any of the various classes of stock after 1930. On September 16 of that year the plaintiffs notified the defendant that they wished their stock "retired at the redemption price of $100.00 per share." This meant that the stock was to be retired on May 1, 1932. On October 31, 1931, certain holders of class A preferred stock began the suit in equity now referred to as the *Crimmins* case. As a preliminary step in this suit, the defendant was restrained from redeeming any shares of class B preferred stock until the further order of the court. This injunction remained in force until April 11, 1933, when a final decree dismissing the bill was entered in accordance with a rescript issued by the full court on April 4, 1933. On November 9, 1931, the defendant's president, pursuant to instructions by the directors, notified the stockholders that a group of class A stockholders had applied for an injunction to restrain the defendant and its directors "from redeeming any shares of Class 'B' preferred stock, until such time as this can be done without impairment of capital as against the holders of Class 'A' Preferred stock," stating that the matter would probably have to be determined by the courts and adding, "In the meantime, the redemption of 'B' stock by the Company has been held up." On the day the final decree was entered the defendant sent to the stockholders a notice reading in its material part as follows: "A decree has been entered today in the Supreme Judicial Court dissolving the injunction which prevented The Kidder Peabody Acceptance Corporation from retiring its Class 'B' Preferred stock in accordance with the provisions under which that class of stock was issued. Your Company is now prepared

to comply with the retirement provisions. Payment will be made to those holders of Class 'B' Preferred stock who gave written notice of intention to take advantage of retirement provisions at least eighteen months prior to November 1, 1932, [May 1, 1932?] the last regular dividend date. In each case the payment will be in cash at par and dividends accrued to the first regular dividend date occurring eighteen months after the date of notice, upon the surrender of the stock certificates." On the next day the plaintiffs presented their certificates and received from the defendant a sum equal to $100 per share plus an amount equal to the accrued dividends up to May 1, 1932. This payment was accepted without prejudice to the plaintiffs' right, if any, "to receive accrued dividends on said stock, or interest up to April 12, 1933." On May 1, 1932, and at all times thereafter down to the date when the class B preferred shares were retired as just stated the defendant was ready, able and willing, but for the injunction, to redeem the plaintiffs' shares and all others which had been offered. It had on deposit in banks during all of that period funds sufficient to pay for the retirement of all of the class B preferred shares which had been offered and it was holding those funds for that purpose in the event that the court should determine that the shares were to be retired. It received no income from those funds except bank interest credited to it at rates varying from one quarter of one per cent to one per cent.

On the agreed facts it is the contention of the plaintiff that the "redemption price" included the accrued dividend up to the date when the stock was paid off and the certificates surrendered; that the option to have the class B preferred stock retired was a safeguard of the instrument; that the retired price was important; that the words "redemption price" were not qualified or made subject to any exception in the language of the contract and none can be implied; that the reference to "any semi-annual dividend date" in the provision giving the directors power to call the stock had nothing to do with the "redemption price," it was simply a detail of the process of redemption; that the

authority given the directors to prescribe the conditions for retirement did not include the power to change the "redemption price" by limiting the accrual of dividends to a particular dividend date even if their vote at the time of issuance of the stock had intended to have that effect. The plaintiffs support their contention that the words "accrued dividend to date of redemption" and "redemption price" were not qualified or made subject to any exception whatever in the language of the contract by the argument that "The possibility of delay owing to some unavoidable circumstance must have been apparent to the parties to the Articles of Organization"; that "If it had been their intent that the risk of such delay should be thrown on the class 'B' stockholders, the article declaring the redemption rights would have contained a proviso that the period of dividend-accrual should not be extended in case of delay, or that the accrued dividend should not exceed a dividend for three semi-annual periods"; that "No such exception is expressed," "none can be implied," and "The contract must be taken as it stands." The plaintiffs also contend that the reference to "any semi-annual dividend date" in the power given the directors to call the stock had nothing to do with the redemption price, and nothing to do with the retirement price which is the same as the redemption price; that the purpose of the reference is to protect the stockholder against having to change his investment suddenly; that, similarly, the provision for eighteen months' notice for retirement at holder's option was to give the corporation time to raise the cash to make the payment, and it had nothing to do with the price to be paid; that in both cases the semi-annual dividend date was mentioned simply as a detail of the process for redeeming or retiring the stock, i.e., to fix the period of notice. The plaintiffs also contend that the authority given to the directors to prescribe the "conditions" for retirement at holder's option was confined to matters that were consistent with the rights given by the articles of organization; that it could not be exercised in a way that would enlarge or reduce those rights; that the vote of the board of directors that the stock may "be retired

on any dividend date at a price of par plus accrued and unpaid dividends to the date when so retired" could not cut short the accrual of the dividend to a particular dividend date, measured from the time elapsed since the notice, if in fact redemption should be delayed; that in substituting the words "date when so retired" for "dividend date" the directors meant to make more plain the fact that the dividend would accrue to the date when the stock was in fact retired.

On the law as expressed in judicial decisions, the plaintiffs contend that the right of cumulative preferred stock to participate in earnings does not limit the right to receive payment of arrears of dividends in liquidation of the company, *Morris* v. *American Public Utilities Co.* 14 Del. Ch. 136, 143; that in liquidation preferred stock is payable with accrued dividends or arrears of dividends especially if the dividends are cumulative, and that the amount to be paid includes the accrued dividend to the day when the stock is paid off. *Willson* v. *Laconia Car Co.* 275 Mass. 435, 440, 442, and cases collected. The same construction has been applied to a provision for a redemption of cumulative preferred stock at holder's option after a certain date (which was not a dividend date) at par "with all arrears of dividends." *Sterling* v. *H. F. Watson Co.* 241 Penn. St. 105. So, in reorganization by exchange of securities, holders of cumulative preferred stock of the old corporation are entitled to all arrears of preferred dividends to the date of exchange — in cash to the extent of surplus earnings and in securities for the unearned balance. *Colgate* v. *United States Leather Co.* 3 Buch. 72, 89, 90. *Lonsdale Securities Corp.* v. *International Mercantile Marine Co.* 101 N. J. Eq. 554, 558, 560. This view of the nature of a cumulative dividend is reflected in the custom of buying and selling unlisted preferred stocks "on a basis of a price per share plus accrued dividend at the rate of 6% per annum from the last preceding semi-annual dividend date to the date of the sale," and was the practice followed in the three years preceding the purchase by the plaintiffs.

The plaintiffs further contend that the giving of the notice by the class B preferred stockholders to the corporation of

their election to have their stock retired did not change them into creditors of the corporation, and did not put them in the position of outside parties having only a right to receive a sum of money on a certain date on surrender of a voucher; that they remained stockholders with all the rights and privileges of their class; and that the corporation did not commit itself unconditionally to make a payment on a particular day by responding to the plaintiffs' notice of election: "We . . . have made notation on our records that the stock . . . will be presented for redemption on May 1st, 1932." It is further contended that the date of redemption of the plaintiffs' shares was postponed by the board of directors, and that the plaintiffs assented to the postponement; that the directors were free to make this change unless the class B preferred stockholders objected thereto; and that upon the filing of the Crimmins and Peirce bill the defendants gave notice to class B preferred stockholders, the plaintiffs among them, that redemption of the shares would be withheld pending the decision of the court. The plaintiffs suggest, perhaps contend, that when the bill in the *Crimmins* suit was filed apparently neither the corporation nor the plaintiffs regarded the corporation as bound to pay off the plaintiffs' stock on May 1, 1932, in the sense that a contract would be broken if the stock was not paid off on that date, and that the date was simply "noted" as being the date when the plaintiffs would present their certificates; that they may have been free to change their minds, withdraw their election before May 1, 1932, and continue to be stockholders without losing their right to make a new election later on. And they contend that, however that may be, they were free to withdraw their election after they received notice from the directors that retirement would be "withheld" and that class B preferred stockholders did not waive nor lose any rights by acquiescing in the postponement. The *Crimmins* suit was dismissed on April 11, 1933, and the corporation immediately notified the class B preferred stockholders that "Your Company is now prepared to comply with the retirement provisions. Payment will be made to those holders of Class 'B' Preferred

stock who gave written notice of intention to take advantage of retirement provisions at least eighteen months prior to November 1, 1932 [May 1, 1932?], the last regular dividend date. In each case the payment will be in cash at par and dividends accrued to the first regular dividend date occurring eighteen months after the date of notice, upon the surrender of the stock certificates." The plaintiffs contend that the notice had no effect to limit the accrual to the first regular dividend date occurring eighteen months after the date of notice, and that the president of the corporation had no power to change the preferred stock contract.

The plaintiffs state in their brief that their cause of action is not for breach of contract in not redeeming the stock on the next dividend date after eighteen months from their notice, on May 1, 1932, nor a claim for damages measured by interest for failure to pay the money at a promised date; but that their claim is for a part of the redemption price, which was not paid when the stock was redeemed on April 12, 1933.

Against the position of the plaintiffs, it is contended by the defendant that the nature of the right by virtue of which retirement of class B stock was demanded was a purely contractual right, in effect an irrevocable offer by the defendant to the stockholders of class B preferred stock to repurchase their stock at a specified price; that the price named is a sum of money equivalent to the par value of the stock, plus all accrued and unpaid dividends up to May 1, 1932, which was the first regular dividend date occurring eighteen months after the date of notice. It contends that it did not agree to pay these dividends as dividends, and that such an agreement would be unenforceable in the absence of any profit or surplus out of which dividends might be paid. *Field* v. *Lamson & Goodnow Manuf. Co.* 162 Mass. 388, 392. *Willson* v. *Laconia Car Co.* 275 Mass. 435, 441. The defendant further contends that class B stockholders prevailed in *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* on the theory that they were in the position of creditors; that the corporation had contracted to pay a sum measured by the par

value of the stock plus accrued and unpaid dividends, and the fact that there were no undistributed profits and that the capital was impaired made no difference. *Westerfield-Bonte Co.* v. *Burnett*, 176 Ky. 188, 194. See also *Williams* v. *Parker*, 136 Mass. 204.

If the *Crimmins* suit had not been brought, it is plain the liability of the defendant would be determined by the answer given to the question, Did the notice given by the plaintiffs constitute an acceptance of the standing offer of the defendant embodied in the agreement of association and give rise to a contract whereby the defendant was required to take the stock on May 1, 1932, and pay for it at the rate of $109 per share? Assuming that such notice was given, the plaintiffs contend that its letter dated September 18, 1930, stating "We . . . have made notation on our records that the stock . . . will be presented for redemption on May 1st, 1932," in acknowledgment of the plaintiffs' letter of September 16, 1930, stating "we . . . hereby give notice that we wish said stock retired at the redemption price of $100.00 per share," was not an unqualified acceptance of the notice of the plaintiffs. ' The answer to this position seems to be that the defendant was the offerer, and that the contract was closed with the delivery and receipt of the notice.

If we assume, without decision, the authority of the board of directors to make the condition that the retirement of class B preferred stock shall be upon any dividend date not less than eighteen months after written notice to the company, the plaintiffs contend that as the president's letter dated November 9, 1931, notifying the stockholders of The Kidder Peabody Acceptance Corporation that an injunction had been asked by various holders of class A stock "to prevent the Corporation and its Directors from redeeming any shares of Class 'B' Preferred stock, until such time as this can be done without impairment of capital as against the holders of Class 'A' Preferred stock," and stating: "There are no adequate legal precedents on the question, and it is probable that this matter will have to be determined by the courts. In the

meantime, the redemption of 'B' stock by the Company has been held up," was delivered before the injunction was decreed on November 17, 1931, it had the legal effect (the class B preferred stockholders not objecting) to postpone the "date of redemption" indefinitely, or until the Supreme Judicial Court should dissolve the injunction.

There is nothing in the contention that the rights of class B preferred stockholders and the rights of the defendant were not vested when the notice was given, and its receipt acknowledged on September 18, 1930; nor that the letter of November 9, 1931, and the acquiescence of class B preferred stockholders to the declaration of the defendant, that the redemption of class B stock would be held up until the matter involved in the suit of *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* was determined by the court, operated to change the terms of the contract. The plaintiffs make no claim that they are entitled to interest or dividends by way of damages for a breach of the agreement to pay the redemption price on May 1, 1932.

The vote of the directors on March 29, 1922, that class B preferred stock may be retired "at a price of par plus accrued and unpaid dividends to the date when so retired" is an agreement to pay the price determined as of the date when the stock was to be retired under the terms of the contract, and not at a price to be ascertained when the stock was in fact retired. The phrase in the vote "when so retired" refers to the phrase "may . . . be retired on any dividend date."

Without further discussion we think the defendant on the facts has performed its full duty, and that judgment should be entered for the defendant.

*So ordered.*