[No. 31476.   *En Banc.*   May 1, 1951.]

RAYMOND M. HAY *et al., Respondents,* v. EDWARD T. HAY, *Individually and as Administrator, Appellant.*[1]

*Fielding H. Ficklen* and *Keith, Winston, MacGillivray & Repsold,* for appellant.

*David O. Hamlin* and *Weaver & Jones,* for respondents.

[1]Reported in 230 P. (2d) 791.

DONWORTH, J.—The liquidating trustees of The Big Bend Land Company, a Washington corporation, instituted this action to secure a declaratory judgment construing Article VI of its amended articles of incorporation. The question presented is whether the holders of cumulative preferred stock upon liquidation of the corporation are entitled to be paid accrued dividends from the corporate assets before the common stockholders become entitled to participate in the distribution thereof, the corporation having no earned surplus or net profits.

The trial court entered a judgment declaring that the amended articles of incorporation required that the holders of the cumulative preferred stock receive from the assets of the corporation, so far as they might reach, an amount equal to six per cent per annum computed on the par value of each share from the date of issuance thereof to date of liquidation (January 18, 1947), and that the holders of the common stock were not entitled to receive any distribution of assets until payment of the six per cent per annum accrued dividend to the preferred stockholders had been fully made. The defendant Edward T. Hay, individually and as administrator of the estate of Fayette H. Imhoff, deceased, has appealed.

The history of the Big Bend Land Company is set forth in *Hay v. Big Bend Land Co.*, 32 Wn. (2d) 887, 204 P. (2d) 488, to which reference is made for details concerning its corporate structure.

The respondents have moved to dismiss the appeal upon the ground that Bruce M. Hay, trustee for Sara Ann Hay, a minor, was not served with notice of appeal. The trustee held shares of preferred stock in trust for the minor. He was not made a party to the action. After commencement of the trial, one of counsel for respondents asked that the trustee be made an additional party defendant, and the request was granted by the court. The trustee signed an answer prepared by the attorneys for respondents, which consisted of a general denial and a requirement that respondents be held to strict proof of the allegations of their

complaint. The trustee took no part in the trial. The record does not disclose any reason why the trustee should have been made a party defendant to the action. All of the pre-ferred stockholders had a common interest in the objective sought by respondents. In effect they represented such stockholders. The adverse parties were the common stockholders.

We are of the opinion that the trustee was not a necessary party to the action, and that appellant was not obliged to serve him with notice of appeal in order to confer jurisdiction on this court to review the declaratory judgment. The motion is denied.

Prior to December 27, 1921, the capital stock of The Big Bend Land Company consisted entirely of common stock. On that date Article VI of the articles of incorporation was amended to read as follows:

"AMENDED ARTICLE VI

"The amount of the capital stock of this Corporation is One Million Five Hundred Thousand ($1,500,000) Dollars, divided into fifteen thousand (15,000) shares of the par value of One Hundred ($100) Dollars each.

"The stock of this Corporation is divided into two classes, namely; common stock in the amount of eighty-five hundred (8500) shares of the par value of One Hundred ($100) Dollars each, and preferred stock in the amount of sixty-five hundred (6500) shares of the par value of One Hundred ($100) Dollars each.

"The terms on which these two classes of stock are created and the particular character of the preference of the preferred stock and the conditions and limitations applying thereto and to the common stock are as follows:

"(a) The holders of the preferred stock shall be entitled to receive, when and as declared by the Board of Trustees of this Corporation, cumulative dividends thereon from the date of issuance of said preferred stock at the rate of six. (6%) per cent per annum and no more, payable out of the surplus profits of this Corporation annually on the 31st day of December of each year before any dividend shall be paid or set apart for the common stock. Dividends on the preferred stock shall be cumulative, so that if in any year dividends amounting to six (6%) per cent shall not have been paid on such stock the deficiency shall be paid before any

dividend shall be declared or paid upon or set apart for the common stock. . . .

"(b) This Corporation may at any time, or from time to time as shall be permitted under the laws of the State of Washington, redeem the whole or any part of its preferred stock on any annual dividend date by paying therefor in cash One Hundred and one and 50/100 ($101.50) Dollars per share, and all accrued unpaid dividends thereon at the date fixed for such redemption. . . .

"(c) Out of any surplus profits of the Corporation remaining after the payment of full dividends on the preferred stock for all previous dividend periods and after full dividends thereon for the then current annual dividend period shall have been declared and paid in full or provided for, then, and not otherwise, dividends may be declared upon the common stock.

"(d) In the event of any liquidation, dissolution or winding up of the Corporation the holders of the preferred stock shall be entitled to be paid in full the par value thereof, *and all accrued unpaid dividends thereon* before any sum shall be paid to or any assets distributed among the holders of the common stock, but after payment to the holders of the preferred stock of the amounts payable to them as hereinbefore provided, the remaining assets and funds of the Corporation shall be paid to and distributed among the holders of the common stock."

We have italicized the words which constitute the crux of this controversy.

There are no corporate creditors involved. The holders of the preferred stock have received from the liquidating trustees the par value thereof. No dividends on the cumulative preferred stock have ever been declared or paid. No surplus profits are available with which to pay the accumulated dividends. There is a substantial amount of assets on hand, but they would all be absorbed if they should be applied in payment of accrued dividends on the preferred stock.

Appellant takes the position that the phrase "all accrued unpaid dividends" means that before there can be a dividend there must be surplus profits, and that, since none ever existed, the right to such dividends never accrued and therefore none are payable. In support of his theory, appellant

cites *Penington v. Commonwealth Hotel Const. Corp.*, 17 Del. Ch. 188, 151 Atl. 228. This case was decided by the chancellor of Delaware, who so construed a like phrase. Appellant also relies on the case of *Michael v. Cayey-Caquas Tobacco Co.*, 190 App. Div. 618, 180 N. Y. Supp. 532, which is in accord with the construction placed upon the phrase by the chancellor and is based upon a statute similar to Rem. Rev. Stat., §. 3823, discussed later in this opinion.

On the other hand, it is the contention of respondents that subdivisions (a), (b), and (c) of Amended Article VI of the articles of incorporation relate to the payment of dividends to preferred stockholders out of surplus profits *while the corporation is a going concern,* but that subdivision (d) authorizes the payment of accumulated and unpaid dividends out of assets *upon liquidation of the corporation,* even though there be no surplus profits available. They argue that, the corporation being in the process of liquidation, there can be no impairment of its capital and, therefore, there is no longer any purpose in restricting the payment of dividends to surplus profits.

It seems clear, even without reference to the decisions of other courts of last resort hereinafter cited, that the two classes of stockholders contracted between themselves with respect to the division of the assets in case of liquidation. Their agreement was that the preferred stockholders should receive the par value of their stock plus an amount equal to "all accrued unpaid dividends thereon" before any assets should be distributed to the common stockholders.

It should be noted that the articles contain no condition to the effect that the surplus profits must be equal to, or greater than, the total of all accrued unpaid dividends before such distribution could be made. The parties were contracting with reference to a possible future liquidation, a situation where the statutory prohibition (Rem. Rev. Stat., § 3823) against declaration of dividends out of capital had no application.

Appellant's construction of the subparagraph (d) of Amended Article VI as being subject to an implied condition

(applicable only to a going concern) that such cumulative dividends are payable only out of surplus profits, is contrary to the fundamental concept of the law of corporations. Appellant's construction of subparagraph (d) is based upon a failure to recognize the vital distinction between a corporation which is a going concern and one which is in liquidation. The reference to "all accrued and unpaid dividends" in subparagraph (d) is the only practical yardstick by which the total share of the assets (which the preferred stockholders were to receive upon liquidation) could be measured. At the time the amended article was drafted and adopted, the quoted phrase was the most definite way that the preferential rights of the preferred stockholders could have been described. It stated the method by which the amount distributable to the preferred stockholders could be computed in the event of a liquidation in the future.

The decisions bearing on this subject were formerly in direct conflict, but the great weight of authority presently supports the interpretation of subparagraph (d) adopted by the trial court in this case. 12 Fletcher, Cyclopedia, Corporations (Rev. & Perm. ed.) 198, § 5449.

The following decisions uphold the judgment of the trial court: *Penington v. Commonwealth Hotel Const. Corp.*, 17 Del. Ch. 394, 155 Atl. 514, 75 A. L. R. 1136; *National Bank of Union Point v. Amoss*, 144 Ga. 425, 87 S. E. 406, Ann. Cas. 1918A 74; *Page v. Whittenton Mfg. Co.*, 211 Mass. 424, 97 N. E. 1006; and *Johnson v. Johnson & Briggs*, 138 Va. 487, 122 S. E. 100; *Fawkes v. Farm Lands Inv. Co.*, 112 Cal. App. 374, 297 Pac. 47; *Willson v. Laconia Car Co.*, 275 Mass. 435, 176 N. E. 182; *Levin v. Pittsburgh United Corp.*, 330 Pa. 457, 199 Atl. 332 (construing Pennsylvania statute); *Drewry-Hughes Co. v. Throckmorton*, 120 Va. 859, 92 S. E. 818; *Garrett v. Edge Moor Iron Co.*, 22 Del. Ch. 142, 194 Atl. 15; *Hildreth v. Western Realty Co.*, 62 N. D. 233, 242 N. W. 679; *Waldner v. Equitable Loan Society*, 60 F. Supp. 372; *Westerfield-Bonte Co. v. Burnett*, 176 Ky. 188, 195 S. W. 477; *Langben v. Goodman*, 275 S. W. (Tex. Civ. App.) 841; *Bunker Hill Country Club v. McElhatton*, 282 Ill. App. 221; *Gaston*

*v. Kidder Peabody Acceptance Corp.*, 285 Mass. 387, 189 N. E. 78.

The proper construction of an agreement similar to subparagraph (d) of Amended Article VI was adopted in *Fawkes v. Farm Lands Inv. Co., supra,* the court saying:

"The provisions of the preference agreement amount to nothing more than a plan for the division of the property of the corporation upon its dissolution, and the measure or standard of such division was the dividend rate fixed by the articles of incorporation to be paid to the owners of the preferred stock.

"The object to be achieved in the issuance of preferred stock is ordinarily twofold. First, the investor is to be assured of a continued or periodical return, or dividend or dividends from the profits of the corporation without the uncertainty attendant upon the ownership of common stock; and secondly, the investor is to be assured, as an additional inducement to invest, that in the event of dissolution and distribution of the assets of the corporation between the two classes of stockholders, if the anticipated profits have proved insufficient to produce such a dividend or return upon its capital stock, then he shall receive it upon such distribution of the capital assets in preference to any distribution to the holders of the common stock. (*Johnson v. Johnson & Briggs, Inc.,* 138 Va. 487 [122 S. E. 100, 102].)

"Such a plan is often used and plays a prominent part in the recognized business practice of the country. The plan is without value if cumulative dividends are to be paid only out of net earnings."

The Massachusetts court in *Willson v. Laconia Car Co., supra,* in construing another similar agreement, said:

"The contract stating the rights of the preferred stockholders has a double aspect. The provision touching annual dividends at the specified rate payable quarterly out of 'the surplus or net profits of the corporation,' was founded on the theory and hope of a prosperous business. Such dividends could be paid only by a corporation financially successful. *But there was also a provision designed to govern rights in the event of business disaster resulting in a voluntary or compulsory winding up of affairs and a dissolution of the corporation.* In that situation the preferred stockholders were to be entitled to receive in full both the 'principal amount of their shares and the unpaid dividends accrued

thereon.' Speaking in the niceties of legal phraseology, as well as in the ordinary language of business, there can be no 'dividends' until they are declared and voted by the authorized representatives of a corporation. *Anderson v. Bean*, 272 Mass. 432, 444, and cases cited. It is manifest, also, that no dividends rightly could be declared by a corporation in financial distress, destitute of surplus or net profits. *Field v. Lamson & Goodnow Manuf. Co.* 162 Mass. 388, 392. Yet it is plain from the agreement of association and articles of organization in the case at bar that the words of preference were designed to be operative under precisely those conditions of adversity. The advantages of the holders of preferred stock are not restricted to conditions of prosperity, but are general in scope and apparently intended to be operative in all the hazards of business and alike in good or evil fortune. Construing these two provisions as a whole, it seems plain that neither is designed to exclude the other but each is to control in the circumstances to which it is applicable. *The words 'unpaid dividends accrued,' or those of similar import, as descriptive of the rights of holders of stock of some degree of preference, have come to have a generally understood significance.* The words 'unpaid' and 'accrued' modify the word 'dividends' and alter what would otherwise be the force of that word if it stood alone. The words in combination express the idea that the dividends, if not regularly paid out of available earnings, may be amassed or stored up, whether earned or not earned, at the regular dividend dates, and attach to the shares of such stock until conditions arise when they may be declared and paid. The requisite conditions may never arise. Whether they do or not must depend upon the precise phrase of the preference in a given case and the facts which come to pass. *In the event which has befallen, we think that the holders of preferred stock are entitled both to the par value of their stock and to dividends which have not been declared or paid* but which would have been declared and paid if there had been surplus or net profits of the corporation wisely applicable to such dividends during the periods when no dividends have been paid. *This appears to us to be the sense obvious to the common understanding from the words used.* Interpreted in their normal and ordinary, as distinguished from their technical and strained, meaning, this is their signification. The rights of creditors are not involved because in liquidation or winding up all the debts of the corporation must be paid in full. The words of the contract now opera-

tive in the facts disclosed are designed to establish the relative rights of holders of preferred stock as between themselves." (Italics ours.)

The New York case of *Michael v. Cayey-Caguas Tobacco Co.*, 190 App. Div. 618, 180 N. Y. Supp. 532, cited by appellant, has been unanimously disapproved in the United States. That case followed an English case (*In re Hall & Co., Ltd.* (1909), L. R. 1 Ch. 521) which was rejected as authority in 1920 in a later English case (*In re Springbok Agricultural Estates, Ltd.*, 1 Ch. 563).

Appellant also cites the *minority* opinion in the leading case of *Penington v. Commonwealth Const. Corp.*, cited above. The reasoning of the minority opinion in that case was commented upon in 30 Mich. L. Rev. 281, 285, as follows:

"This reasoning is not too impressive. It is submitted that the proper solution for the problem arising in these cases is to consider the purpose of the provision in question. One is presented with two distinct situations—with a going concern, on the one hand, and a firm in liquidation on the other. Consequently, it is rather hard to see any correlation between the two or why the interpretation of the word 'dividends' in the going-concern clause should be said to control as to the meaning of the word 'dividends' in the liquidation clause. An investor places his money in cumulative preferred stock because it has a guaranteed dividend and certain preferences, as set forth in the stock agreement. If this agreement gives preference as to dividends in the liquidation proceedings, the stock would normally be considered as a better business risk. As a whole, these preference clauses are quite uniform. They provide, first, for the payment of the firm's debts, second, for the repayment of a fixed amount on the preferred stock, and then, for the payment of any unpaid dividends accrued. This clause is designed as the key for the distribution of the assets of the firm in dissolution, and is not an agreement for the distribution of profits or surplus. Viewed from this standpoint, it would seem that that clause 'unpaid dividends accrued' would permit of but one interpretation, and that, to give preference regardless of any considerations of profits or surplus. For this reason, which, it is submitted, is the underlying basis of the English doctrine and the better American

view, the instant case [*Penington v. Commonwealth Hotel Const. Corp.*, 17 Del. Ch. 394, 155 Atl. 514] reaches the correct result."

To review each of the cases cited above as supporting the trial court's disposition of this case, would unduly extend this opinion. An examination of them will reveal cogent reasons for affirming the trial court.

■■ Reference has previously been made to Rem. Rev. Stat., § 3823, which was in effect when the articles of incorporation here involved were amended. This statute provides:

"It shall not be lawful for the trustees to make any dividend except from the net profits arising from the business of the corporation, nor divide, withdraw, or in any way pay to the stockholders, or any of them, any part of the capital stock of the company, nor to reduce the capital stock of the company unless in the manner prescribed in this chapter, or the articles of incorporation or by-laws; and in case of any violation of the provisions of this section, the trustees, under whose administration the same may have happened, except those who may have caused their dissent therefrom to be entered at large on the minutes of the board of trustees at the time, or were not present when the same did happen, shall, in their individual or private capacities, be jointly or severally liable to the corporation and the creditors thereof in the event of its dissolution, to the full amount so divided, or reduced, or paid out: *Provided, that this section shall not be construed to prevent a division and distribution of the capital stock of the company which shall remain after the payment of all its debts upon the dissolution of the corporation* or the expiration of its charter. . . ." (Italics ours.)

This statutory enactment forbidding the declaration of dividends except from net profits specifically provides that it shall not be construed to prevent a distribution of assets upon a dissolution after the payment of corporate debts. Appellant construes this statute as applying to the very situation to which the statute says it shall have no application. This is directly contrary to its express provision. There is nothing unusual in § 3823—practically all states have statutes forbidding the declaration of dividends out of capi-

.tal assets while the corporation is a going concern. Section 3823 has no bearing upon the problem involved here.

Being of the opinion that Rem. Rev. Stat., § 3823, expressly provides that it has no application to this case and also that, according to the great weight of authority, respondents are entitled under the provisions of subparagraph (d) to receive a sum equal to all accrued unpaid dividends as well as the par value of their cumulative preferred stock in the liquidation of this corporation before appellants shall be entitled to participate therein, we affirm the judgment of the trial court.

BEALS, HILL, HAMLEY, and FINLEY, JJ., concur.

GRADY, J. (dissenting)—I am not in accord with the construction placed by the majority upon either subdivision (d) of Amended Article VI, or Rem. Rev. Stat., § 3823. I think the error becomes apparent when some of the history of The Big Bend Land Company is related.

The corporation was organized in 1901 to conduct a general real-estate business, to borrow and loan money, and to buy and sell merchandise. The capital stock consisted of $10,000, divided into 100 shares of common stock of the par value of $100 each. Later the capital stock was increased to $750,000. Lizzie L. Hay, now deceased, had advanced money to the corporation, which by 1921 reached a sum in excess of $500,000. M. E. Hay and E. T. Hay transferred their mercantile business to the corporation. The capital stock of the corporation was increased to $1,500,000, represented by 8500 shares of common stock of the par value of $100 a share and provision was made for the issuance of 6500 shares of preferred stock of the same par value. Lizzie L. Hay received in satisfaction of the indebtedness owing to her 5400 shares of the preferred stock. The articles of incorporation were amended as set forth in the majority opinion. In 1934, Amended Article VI was further amended by adding subdivision (e), which extended voting rights to preferred stockholders during default in the payment of dividends.

The corporation acquired a large amount of real estate, but over the years which followed the adoption of Amended Article VI had no surplus profits out of which any dividends on either common or preferred stock could be declared. In 1946, a survey of the corporate financial structure was authorized. The board of trustees adopted a resolution providing for the reduction of all capital assets to cash as speedily as circumstances might permit in order that, at a subsequent date, the stockholders might consider and adopt a plan of liquidation, distribution, and dissolution of the corporation. Such a plan was later adopted, and respondents became the liquidating trustees. It developed that the net assets of the corporation were sufficient to redeem the preferred stock at par value, but if the preferred stockholders receive the promised dividends, assets instead of surplus profits will have to be used therefor. The result will be that the common stockholders will get no part of such assets. The liquidating trustees, being in doubt as to who was entitled to receive the assets upon liquidation after the redemption of the preferred stock, brought this action to secure a declaratory judgment.

The problem presented has caused the courts much difficulty, arising out of determining what are "accrued dividends," "cumulative dividends," "accumulated dividends," or "unpaid dividends," as those words are used in articles of incorporation. The courts do not seem to have had much trouble when questions arose in the ordinary course of business of a corporation, but differences of opinion arose when on liquidation preferred stockholders sought to have a preference in the distribution of assets to reimburse them, because in certain years the corporation had earned no net profits out of which dividends could be declared or paid.

One school of thought is of the view that a dividend can come into being and exist only by affirmative declaration of the trustees of a corporation, and then only if the corporation has on hand surplus net profits earned in the transaction of its business. If net profits, or a surplus, never existed, the right to a dividend never accrued, and that

which never accrued cannot be demanded out of the capital account on liquidation. This was the view of the chancellor of Delaware in *Penington v. Commonwealth Hotel Const. Corp.*, 17 Del. Ch. 188, 151 Atl. 228. One phase of *Michael v. Cayey-Caguas Tobacco Co.*, 190 App. Div. 618, 180 N. Y. Supp. 532, is to the same effect.

Another school of thought is that dividends, if not regularly paid out of available earnings, may be amassed or stored up, whether earned or not earned, at regular dividend dates, and, in the absence of a controlling statute, may be paid out of assets when the corporation is liquidated if the articles of incorporation so provide. This idea found expression in *Penington v. Commonwealth Hotel Const. Corp.*, 17 Del. Ch. 394, 155 Atl. 514, 75 A. L. R. 1136. Three judges of the court disagreed with the chancellor. Two believed his views were correct and consistent with the better and more logical reasoning. The cases cited in the majority opinion follow the reasoning of the three judges.

Whatever may be said as to the soundness of one view or the other, it must be observed that in none of the cases relied upon by the majority were the courts guided by any statute like Rem. Rev. Stat., § 3823, with its two-fold aspect. The Pennsylvania case cited makes reference to a statute which authorizes the directors of a corporation to declare dividends out of net profits, but such statute contained no inhibition against division of capital assets among stockholders in lieu of unpaid guaranteed dividends.

It seems to me apparent that whoever prepared subdivisions (a), (b), (c), and (d) of the amended articles of incorporation was familiar with the rules of law relating to the rights of holders of common and preferred stock and desired to follow Rem. Rev. Stat., § 3823, the applicable part of which reads as follows:

"It shall not be lawful for the trustees to make any dividend except from the net profits arising from the business of the corporation, nor divide, withdraw, or in any way pay to the stockholders, or any of them, any part of the capital stock of the company, . . . Provided, that this section shall not be construed to prevent a division and distribution

of the capital stock of the company which shall remain after the payment of all its debts upon the dissolution of the corporation or the expiration of its charter:   .   .   ."

The statute contains two inhibitions: (1) against making any dividend, except from net profits arising from the business; (2) against any division, withdrawal, or payment to the stockholders of any part of the capital stock of the corporation. By the proviso, the capital stock remaining after debts are paid may be divided among the stockholders when the corporation is dissolved or its charter expires. The subjects of the two inhibitions are wholly unrelated. The first relates to dividends and forbids the making of any, except from net profits. No dividend can be made out of assets, and any article of incorporation construed as so providing would be contrary to the statute and void. The second relates to the assets of the corporation and forbids any division thereof, except on dissolution or expiration of the charter.

Making dividends and dividing assets are two different things. A dividend can never be made unless there are in existence net or surplus profits derived out of the current business done by the corporation. The capital stock or assets of The Big Bend Land Company belong to the common stockholders. The preferred stockholders had either loaned money to the corporation and received in payment shares of preferred stock or had become purchasers of such stock. The common stockholders could have received dividends as and when they were made by the trustees out of net profits and secondary to preferred stockholders. The latter could have received dividends from the same source, but on an annual percentage basis.

If at the end of any year net profits had not been earned out of which the dividends could have been made in whole or in part, then the preferred stockholder had a preference whereby he would be entitled to such dividends as soon as there were net profits available. In the case of the common stockholder, he would not necessarily be paid a dividend, even though there might be available net profits therefor, but the preferred stockholder became entitled to dividends

annually *if* there were net profits out of which they could be made. If such dividends were made, but were not paid to the stockholder, or if he chose to leave them with the corporation, he would have a preference right over common stockholders later to have them paid to him. Such dividends would be property of the corporation, and when ultimately paid would not be as dividends, but as corporate funds. Such payment would not be a violation of Rem. Rev. Stat., § 3823. Dividends as such are not made when a corporation is liquidated and dissolved. They are only made while it is doing business.

It seems to me that the purpose of subdivision (d), when considered along with all of the other subdivisions of Amended Article VI and Rem. Rev. Stat., § 3823, was to provide that, when the corporation was liquidated and dissolved, the preferred stockholders were entitled to have a redemption made of their stock and to receive any dividends which had at any time been made by the trustees out of net profits but had not been paid to them, before any should be paid to or any assets distributed among the holders of the common stock. I can find nothing in subdivision (d) that authorizes the making of dividends out of assets upon liquidation and dissolution.

In *Jorquson v. Apex Gold Mines Co.*, 74 Wash. 243, 133 Pac. 465, *Rossi v. Rex Consolidated Mining Co.*, 108 Wash. 296, 183 Pac. 120, and *Austin v. Wright*, 156 Wash. 24, 286 Pac. 48, the concept of dividends, both with reference to a corporation that was a going concern and one being dissolved, was considered. These cases clearly indicate that it is the policy of Rem. Rev. Stat., § 3823, that a dividend can never be derived out of assets, but its only source is net profits; and that when a corporation is dissolved, the only thing there is to divide among stockholders is assets and not net profits. The idea of making dividends is wholly dissociated from dividing the assets of the corporation among stockholders.

I think a reading of the whole of Amended Article VI in connection with Rem. Rev. Stat., § 3823, must convince one

that the dividends referred to in subdivision (d) can mean only those that may have been once lawfully made by the board of trustees out of surplus profits, but which had not been paid to the preferred stockholders. If we do otherwise, we must accuse the corporation of adopting a tricky device to favor preferred stockholders and deprive the common stockholders of their property. Granting that if in any year or years no net profits are earned, dividends have nevertheless "accrued" and during successive years have "accumulated" and may be paid at some future time, they can only be paid out of surplus profits and not out of capital. If the corporation is liquidated and does not have on hand any net or surplus profits, then there is nothing out of which the "dividends" can be paid. This was the view of the court in *Michael v. Cayey-Caguas Tobacco Co.,* 190 App. Div. 618, 180 N. Y. Supp. 532, especially when fortified by a statute the same as Rem. Rev. Stat., § 3823. The court said:

"Since no profits have been made, and so no dividends were or could have been declared, it is difficult to understand how eight per centum annual dividends could have accumulated during these intervening years to be now paid out of 'surplus assets and funds' or 'surplus profits,' to wit, the amount remaining after payment of debts and repayment of capital. No such sum exists. The amount now on hand is not profits, but is capital. . . . There being no accumulated profits, when the preferred stockholders received the full par value of their stock they had received all that they were entitled to, in view of the fact that the amount remaining in the hands of the company was not sufficient to pay the par value of the common stock."

The court also arrived at the same conclusion in the absence of a statute, following some English cases. It is this part of the decision that has been rejected by some courts, as stated in the majority opinion. No court, so far as I have been able to find, has disagreed with the opinion of the New York court in its application of the statute.

The state of Wisconsin has met the problem by enacting a statute of the same import as Rem. Rev. Stat., § 3823, with reference to confining dividends to net profits and not using assets to pay "accumulated" dividends, but it is more specific

in its wording, in that there is an express limitation to profits in the payment of dividends upon liquidation. In *Hull v. Pfister & Vogel Leather Co.*, 235 Wis. 653, 294 N. W. 18, it was held the statute was a part of the contract between the corporation and the stockholders, and the court refused to permit the corporation on liquidation to pay accumulated dividends out of assets. It is proper to note that, when the corporation adopted the article relating to liquidation, it contained a specific provision that preferred stockholders should be first paid the par value of their stock

". . . and in addition thereto, in case that there shall then be and to the extent that there shall then be any profits of the corporation applicable to dividends on preferred stock, an amount equal to five per centum (5%) upon the par value of said stock, plus the amount of such dividends then accrued and unpaid, but they shall not be entitled to any further or other participation in the distribution of assets and/or profits."

If we consider our statute as a part of Amended Article VI and the theory of our cases above cited, the same conclusion should be reached as was done by the Wisconsin court.

From the time preferred stock was issued in 1921 until liquidation in 1949, the corporation earned no net profits and could declare no dividends. It would be a gross injustice to the holders of common stock to now take their property from them and give it to the preferred stockholders to satisfy a fictional claim that accrued dividends had accumulated and were owing and unpaid.

We should not be led astray by any imposing array of decisions from other states. Those courts were dealing with contractual provisions in the form of an article of incorporation and held the parties intended deficit payments should be made to preferred stockholders out of assets on liquidation of the corporation. The articles of incorporation under consideration were not promulgated in the light of any statute like ours, and the courts were not furnished with such a guide. I have no doubt if such statutes had existed the courts would have interpreted the articles of incorporation before them as did the New York court.

I think the judgment should be reversed and a declaratory judgment entered to the effect that, after the redemption of the preferred stock, the remaining assets should be divided among the common stockholders.

SCHWELLENBACH, C. J., ROBINSON, and MALLERY, JJ., concur with GRADY, J.