399 F.2d 749
 Loren FORD and Frances Ford, Husband and Wife, and Davenport Equipment Company, Inc., a Washington Corporation, Appellants,
v.
INTERNATIONAL HARVESTER COMPANY, a New Jersey Corporation, Appellee.
 No. 21964.
 United States Court of Appeals Ninth Circuit.
 August 27, 1968.
 
 Justin Quackenbush, (argued), of Quackenbush, Dean & Smith, Spokane, Wash., for appellants.
 Will Lorenz, (argued), of Davis, Trezona, Chastek & Lorenz, Spokane, Wash., for appellee.
 Before HAMLEY and CARTER, Circuit Judges, and FOLEY, District Judge*.
 HAMLEY, Circuit Judge:
 
 
 1
 This is a diversity action by a farm equipment dealer and its sole shareholders to recover damages for breach, by the manufacturer, of an exclusive dealership agreement. Following a nonjury trial the district court entered judgment for defendant, holding that the suit is barred by the statute of limitations. Plaintiffs appeal.
 
 
 2
 The plaintiffs are Davenport Equipment Company, Inc., and its sole shareholders, Loren and Frances Ford. In the fall of 1958, Ford became interested in obtaining an International Harvester Company (Harvester) dealership in Eastern Washington. In furtherance of this project Ford had a number of discussions with Clyde Wells, then district manager of Harvester, defendant herein. Eventually they settled upon Davenport, Washington, as the best place for Ford to locate. At that time Denson Hardware Company (Denson) owned the Harvester dealership in Davenport.
 
 
 3
 In the course of these discussions, Ford and Wells agreed that Harvester would not permit any Harvester farm equipment dealership to operate in Edwall, twenty-three miles from Davenport, in competition with Ford so long as Ford was operating a Harvester dealership in Davenport. Relying upon this agreement, Ford purchased the Davenport dealership from Denson and began business on January 2, 1959, as Davenport Equipment Company.
 
 
 4
 Between January 4, 1959 and November 24, 1961, Ford and Harvester executed eleven written dealer sales and service agreements covering various types of farming equipment. None of these standard-form contracts contained a prohibition on the number of dealerships Harvester might establish in the Davenport area. Each of the contracts was immediately terminable by Harvester for cause, and was terminable by either party without cause upon giving notice and waiting for a specified period of time ranging from ten days to six months.
 
 
 5
 At the time Ford purchased the Harvester dealership in Davenport, St. John Hardware and Implement Company (St. John Hardware) was the Harvester dealer in St. John, Washington. In March 1960, that company purchased a building in Edwall and in the fall of that year commenced selling and servicing Harvester equipment. On February 6, 1961, Harvester and St. John Hardware entered into three dealer sales and service agreements for St. John Hardware's Edwall operation.
 
 
 6
 By the fall of 1960, Ford was aware of the new Harvester operation in Edwall and began a series of complaints, first to Wells and then to Harold Berry who replaced Wells as Harvester's district manager on January 6, 1961. Shortly thereafter Berry informed Ford that Harvester had a prior commitment with St. John Hardware and would be subject to suit by St. John Hardware if Harvester tried to keep them out of Edwall. Ford testified that by May of 1961 he knew Harvester had signed a dealership contract with St. John Hardware covering the Edwall business.
 
 
 7
 During the remainder of 1961 and throughout 1962 and 1963, Ford continued his dealership in Davenport despite the competition in Edwall. In February 1964, however, Ford began liquidating the Davenport Equipment Company, and on December 8, 1964, Ford's request that his dealership with Harvester be terminated was accepted. This suit for breach of the oral agreement was commenced on May 11, 1965.
 
 
 8
 Under the Washington statutes, actions on oral contracts must be commenced within three years "after the cause of action shall have accrued * * *." Wash.Rev.Code §§ 4.16.010, 4.16.080 (1962). In Taylor v. Puget Sound Power & Light Co., 64 Wash.2d 534, 392 P.2d 802, the Supreme Court of Washington held that, absent fraud or a fiduciary relationship, an action for breach of contract accrues at the date of breach and is not postponed until the date of discovery by the aggrieved party or by the fact that all or a substantial amount of the damages did not occur until a later date. Stated another way, a cause of action accrues when the holder thereof first becomes entitled to sue. See Ennis v. Ring, 56 Wash.2d 465, 341 P.2d 885, 353 P.2d 950, 953 (lease); Jones v. Jacobson, 45 Wash.2d 265, 273 P.2d 979, 981 (conversion).
 
 
 9
 The district court accordingly held that Ford could not recover because the breach of the oral contract occurred no later than April 1961, whereas the suit was not commenced until May 11, 1965.
 
 
 10
 Plaintiffs argue, however, that the oral agreement in question was in the nature of a continuing promise which was continually breached as long as Ford was operating in Davenport and St. John Hardware was operating in Edwall. According to plaintiffs, the trial court should therefore have allowed recovery of damages from May, 1962 (three years before this action was begun), to December 8, 1964, when plaintiffs' dealership was terminated.
 
 
 11
 We agree that Harvester had a continuing obligation not to establish a dealership in Edwall as long as Ford was operating in Davenport. The question, therefore, is whether, once this duty was breached by permitting St. John Hardware to operate in Edwall, the continuing operation of St. John Hardware constituted a continuing breach or merely the natural and ordinary consequences of the initial wrong.
 
 
 12
 As stated above, the district court found that, by April 1961, Ford was fully aware of St. John Hardware's operation in Edwall and knew that Harvester had signed a dealership contract covering the Edwall operation. Ford's testimony concerning his discussion with Berry and Berry's reply to Ford's complaints, makes it clear that, by April 1961, Ford also knew that Harvester did not intend to terminate the competing dealership in Edwall and did not intend to honor its promise to Ford. Under these circumstances, it is fair to conclude that this action is based on the natural and ordinary damages suffered from the initial breach.
 
 
 13
 Plaintiffs cite several Washington cases in support of their contention that the breach continued from day to day. We find each of them distinguishable from the case now before us.
 
 
 14
 In Doran v. City of Seattle, 24 Wash. 182, 64 P. 230, a homeowner brought an action against the city for negligent construction of a bulkhead in front of his premises which, because of the gradual sliding of the bulkhead, caused damage to his house. The court held that the plaintiff could recover for the damages suffered during the six month limitation period prior to commencement of the action, although some damage had been suffered earlier. The court pointed out, however, that at the time of the first damage it was difficult to tell whether the damage would continue and, if so, to what extent.
 
 
 15
 Moreover, in Lindquist v. Mullen, 45 Wash.2d 675, 277 P.2d 724, wherein the Washington court held that actions based on negligence accrue at the time of the act and damage, notwithstanding the plaintiff's lack of knowledge of the negligent damage. Doran was limited to cases involving trespass.
 
 
 16
 Theurer v. Condon, 34 Wash.2d 448, 209 P.2d 311; Reuter Organ Co. v. First Methodist Episcopal Church, 7 Wash.2d 310, 109 P.2d 798; and Brisky v. Leavenworth Logging, Boom & Water Co., 68 Wash. 386, 123 P. 519, cited by plaintiffs, stand for the proposition that a cause of action does not accrue until there is some injury upon which to predicate a cause of action, although the breach of duty occurred at an earlier time. Here Ford was damaged as soon as St. John Hardware began competing in Edwall and Ford could have commenced an action at that time or within three years thereafter.
 
 
 17
 Plaintiffs also cite Austin v. Wright, 156 Wash. 24, 286 P. 48, in support of their contention that this action involves a continuing breach of a continuing covenant. However, Austin involved successive obligations wherein the plaintiff was permitted to recover on the annual dividends accruing within the period of limitation. Unlike the case before us, the successive obligations were not breached, and no action could be maintained thereon, until they annually accrued.
 
 
 18
 We therefore conclude that, under Washington law, plaintiffs' action accrued when the contract was breached no later than April 1961, and the subsequent damages are not severable from the original cause of action. The district court therefore did not err in holding that the action was barred by the three-year statute of limitations. For somewhat analogous cases, see Cheskov v. Port of Seattle, 55 Wash.2d 416, 348 P.2d 673, and Flink v. Simpson, 49 Wash.2d 639, 305 P.2d 803. This court accords great weight to the determination as to the law of a particular state, made by a district judge sitting in that state. State Farm Mutual Automobile Ins. Co. v. Thompson, 9 Cir., 372 F.2d 256, 259.
 
 
 19
 In view of our disposition of this appeal, we need not consider Harvester's contentions that the district court should have denied recovery for the additional reasons that (1) the parol evidence rule barred proof of the promise, and (2) the promise was illusory.
 
 
 20
 Affirmed.
 
 
 
 Notes:
 
 
 *
 The Honorable Roger D. Foley, Jr., United States District Judge for the District of Nevada, sitting by designation