CAROLINE B. WILLSON & others, executors, *vs.* LACONIA CAR COMPANY & others.

Suffolk.     November 12, 1930. — May 26, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, & FIELD, JJ.

*Corporation,* Dividend, Rights of stockholder, Reorganization, Liquidation. *Words,* "Dividends," "Unpaid dividends accrued."

The agreement of association and articles of organization of a corporation incorporated with cumulative preferred stock and common stock provided that upon dissolution of the corporation the holders of the cumulative preferred stock "shall be entitled to be paid in full, both the principal amount of their shares and the unpaid dividends accrued thereon," in priority to the common stock. No dividends on the preferred stock were declared for a period of ten years. At the end of that period a plan was adopted by the corporation whereby second preferred stock was authorized to be issued to holders of the original preferred stock in exchange for a release of their claims for accumulated dividends up to that time, and such stockholders became entitled to exchange each share of their preferred stock for one share of first preferred stock on which the claims to accumulated dividends had been released and one share of second preferred stock. The rights of holders of the first preferred stock as to future dividends and upon dissolution remained unchanged. Certain of the original preferred stockholders did not accept the plan and refused to release their claims to dividends. Five years later, the business of the corporation not having been successful, the stockholders voted to dissolve it. The net assets remaining after payment of debts were insufficient to pay in full the par value of the first preferred stock. *Held,* that

(1) There was no merit in a contention, by original preferred stockholders who had not accepted the plan, that the issuance of second preferred stock to the assenting original preferred stockholders was in substance a payment to them of their dividends accumulated and unpaid over the period of ten years, and that therefore, under the principle of equality of treatment of all the original preferred stockholders, the plan contemplated that the nonassenting original preferred stockholders should be entitled to their dividends for such period in cash, payable at such later time as the directors should determine or upon dissolution, and that the nonassenting original preferred stockholders

became creditors of the corporation for such dividends: the changes wrought by the plan constituted a reorganization of the corporation and not the payment of a dividend in second preferred stock;

(2) The nonassenting original preferred stockholders, upon dissolution of the corporation, were not entitled to have the unpaid dividends accumulated on their shares during the period of ten years paid in priority to any payment on the par value of the first preferred stock;

(3) In the circumstances, by reason of the provisions of the agreement of association and articles of organization with respect to dissolution, no distinction should be made in liquidation between the principal amount of the first preferred shares and the accumulated and unpaid dividends thereon: both should be treated as principal in determining the percentage which the net assets would permit to be paid to first preferred stockholders;

(4) The assenting original preferred stockholders were entitled to a percentage upon the principal amount of their first preferred shares plus dividends accumulated thereon subsequent to the ten year period, and the nonassenting original preferred stockholders were entitled to a percentage upon the principal amount of their original preferred stock plus all dividends accumulated thereon.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on April 21, 1930, and described in the opinion.

The suit was heard by *Wait*, J., upon the bill and answer, and was reserved for determination by the full court. Material facts appear in the opinion.

*R. Wait*, for the plaintiffs.

*M. Wambaugh*, (*D. M. Hill* with him,) for the defendants.

RUGG, C.J. The plaintiffs by this suit seek to enforce certain rights alleged to be vested in them as holders of preferred stock upon the liquidation of the defendant corporation. The case was reserved upon bill and answer for the determination of the full court. All the facts set out in the bill and not denied in the answer and all relevant facts well pleaded in the answer must be accepted as true. The corporation was incorporated in Massachusetts in 1912 with an authorized capital stock of $2,000,000 consisting of 10,000 shares of cumulative preferred stock and 10,000 shares of common, one share of each class being of a par value of $100. The agreement of association and articles of organization provided that "The holders of the preferred stock shall be entitled to dividends at the rate of 7% per

annum . . . payable from the surplus or net profits of the
corporation. . . . In the event of any liquidation or dissolu-
tion or winding up (whether voluntary or involuntary) of
the corporation the holders of the preferred stock shall be
entitled to be paid in full, both the principal amount of
their shares and the unpaid dividends accrued thereon; the
remaining assets and funds shall be divided and paid to the
holders of the common stock according to their respective
shares." No dividends were paid on the preferred stock
from January 1, 1914, to January 1, 1924, so that by the
latter date unpaid dividends amounting to $70 had accumu-
lated on each share. In March, 1917, the par value of the
common stock was reduced from $100 a share to $50 a
share, and in September, 1920, the common stock was
changed into stock of no par value, and shortly thereafter
the balance sheet of the corporation showed a capital sur-
plus of $500,000. By January 1, 1924, the corporation had
accumulated an earned surplus of $330,635.48, making the
total surplus, including the capital surplus, as of that date
$830,635.48. Dividends not declared or voted had accu-
mulated in the aggregate sum of $700,000 on the preferred
stock on January 1, 1924. The directors deemed it inad-
visable to use any of the working capital of the corporation,
whether described as capital or surplus, to pay the whole
or any part of these accumulated dividends. A plan de-
vised to fund such dividends was adopted by the stock-
holders in April, 1924. That plan was to issue second pre-
ferred stock to the extent of 10,000 shares in exchange for
the release by holders of the preferred stock of claims to
accumulated dividends up to January 1, 1924. The agree-
ment of association and articles of organization of the cor-
poration were amended by striking out provisions as to
preferred and common stock and substituting in place thereof
new provisions. Those respecting the rights of holders of
preferred stock as to rate and accumulation of dividends
and rights upon dissolution of the corporation remained in
the same words as before. The second preferred stock was
without par value and was entitled to dividends of $3.50
per share in each fiscal year after payment of all dividends

accruing subsequently to January 1, 1924, on the first preferred stock, subject to certain other limitations not here material. On dissolution of the corporation the holders of second preferred stock were entitled to $70 per share and dividends as specified. The provisions as to the common stock are of no present consequence. Pursuant to votes of the stockholders and of the directors, the preferred stockholders were given "the right to exchange their present Preferred Stock share for share for one share of Preferred Stock on which the claims to accumulated dividends down to January 1, 1924, have been released, and for one share of Second Preferred Stock. . . ."

Holders of three hundred eleven shares of the preferred stock, including the plaintiffs, who owned one hundred shares, refused to release the claims to back dividends and did not accept the offer of exchange thus authorized. In December, 1929, the stockholders voted to close the affairs of the corporation, liquidate its assets, pay its debts and distribute the balance among the stockholders. The proceeds of all the net assets of the corporation will not be sufficient to pay in full the par value of the first preferred stock. The directors intend to distribute the net assets among the first preferred stockholders according to the aggregate par value of their respective holdings and have already voted to make a payment of $15 on each share.

I. The first contention of the plaintiffs is that they are entitled to have the unpaid dividends accumulated on their shares up to January 1, 1924, paid in priority to any payment on the par value of the first preferred stock. The reasoning on which this contention rests is that the issuing of the second preferred stock to preferred stockholders in consideration of their releasing all their claims to accumulated dividends was in substance the payment of a dividend of the accumulated dividends, and that, since the corporation could not lawfully pay dividends to some preferred stockholders and refuse to pay dividends to others, but must treat all alike, the issuing of the second preferred stock was equivalent to the declaration of a

dividend on all preferred stock. Such declaration, it is argued, was payable in second preferred stock to such holders of preferred stock as elected to make the exchange but payable in cash to such as did not so elect, at a deferred time to be fixed by the directors by appropriate action, and, if- not previously fixed, then upon liquidation or winding up of the corporation. And the conclusion is urged that the plan of issuing the second preferred stock amounted to a declaration of accumulated dividends in cash with deferred payment and transformed the relation between the corporation and the holders of preferred stock not electing to make the exchange into that of debtor and creditor. The authorities adduced to support this contention and conclusion are *Ford* v. *Easthampton Rubber Thread Co.* 158 Mass. 84, 86, 87, *Pennsylvania Iron Works Co.* v. *Mackenzie,* 190 Mass. 61, *Lee* v. *Fisk,* 222 Mass. 418, 420, and *Thomas* v. *Laconia Car Co.* 251 Mass. 529. These cases do not support the result sought by the plaintiffs. The *Thomas* case arose out of the same transactions as are here involved. That plaintiff, holder of shares of preferred stock who had not accepted the offer of exchange, sought to compel the declaration and payment to her in cash of the accumulated dividends on her stock. While the issues argued in that case were not the same as in the case at bar, the propositions here urged by the plaintiffs are incompatible with that adjudication. If the issuance of the second preferred stock in the circumstances disclosed had been thought to be tantamount to the payment or the declaration of a dividend either as between the plaintiff and the corporation, or as between the plaintiff and other holders of preferred stock, the reasoning of that decision would have been quite different. It is not necessary to review the other cases relied upon. Without impugning their authority in any degree, it is enough to say that they do not support this contention of the plaintiffs. There was no inequality of treatment by the corporation between the assenting and nonassenting holders of preferred stock. A like opportunity was offered to all the preferred stockholders to receive shares of second preferred stock on the

same footing. Those who, like the plaintiffs, refused to relinquish their claims to accumulated dividends and to receive the second preferred stock did not become entitled to such dividends payable in cash. They did not thereby become creditors of the corporation. They remained holders of preferred stock with whatever rights accompanied that relationship. The issuance of the second preferred stock was not designated as the payment of a dividend by any corporate action. The nature of corporate action as described in votes of stockholders and directors is commonly accepted as true. *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation,* 273 Mass. 187, 195. The plan adopted by the corporation as to these matters was termed a "reorganization" in *Thomas* v. *Laconia Car Co.* 251 Mass. 529 at page 534. There is no reason to doubt the correctness of that description. Since the business affairs of the corporation had become unsatisfactory, the transaction hardly could have been intended to constitute the payment of a dividend. Compare *Wilder* v. *Tax Commissioner,* 234 Mass. 470.

II. The plaintiffs' alternative contention is that their claim to all accumulated dividends is to be paid *pro rata* with the par value of all the preferred stock. The rights of the plaintiffs with respect to the corporation and other stockholders are contractual in nature. Those rights arise out of the agreement of association and articles of organization touching the holders of preferred stock, and are measured and bounded by the terms there stated. *Joslin* v. *Boston & Maine Railroad,* 274 Mass. 551, 555. The governing language, by the true meaning of which these rights must be ascertained, has already been quoted. Every part of it must be considered in its relation to the whole. All its words must be given a meaning in order to effectuate the intent of the parties and to carry out the main purpose of the instrument. *Koshland* v. *Columbia Ins. Co.* 237 Mass. 467, 475. The contract stating the rights of the preferred stockholders has a double aspect. The provision touching annual dividends at the specified rate payable quarterly out of "the surplus or net

profits of the corporation," was founded on the theory and hope of a prosperous business. Such dividends could be paid only by a corporation financially successful. But there was also a provision designed to govern rights in the event of business disaster resulting in a voluntary or compulsory winding up of affairs and a dissolution of the corporation. In that situation the preferred stockholders were to be entitled to receive in full. both the "principal amount of their shares and the unpaid dividends accrued thereon." Speaking in the niceties of legal phraseology, as well as in the ordinary language of business, there can be no "dividends" until they are declared and voted by the authorized representatives of a corporation. *Anderson* v. *Bean*, 272 Mass. 432, 444, and cases cited. It is manifest, also, that no dividends rightly could be declared by a corporation in financial distress, destitute of surplus or net profits. *Field* v. *Lamson & Goodnow Manuf. Co.* 162 Mass. 388, 392. Yet it is plain from the agreement of association and articles of organization in the case at bar that the words of preference were designed to be operative under precisely those conditions of adversity. The advantages of the holders of preferred stock are not restricted to conditions of prosperity, but are general in scope and apparently intended to be operative in all the hazards of business and alike in good or evil fortune. Construing these two provisions as a whole, it seems plain that neither is designed to exclude the other but each is to control in the circumstances to which it is applicable. The words "unpaid dividends accrued," or those of similar import, as descriptive of the rights of holders of stock of some degree of preference, have come to have a generally understood significance. The words "unpaid" and "accrued" modify the word "dividends" and alter what would otherwise be the force of that word if it stood alone. The words in combination express the idea that the dividends, if not regularly paid out of available earnings, may be amassed or stored up, whether earned or not earned, at the regular dividend dates, and attach to the shares of such stock until conditions arise when they may be declared and

paid. The requisite conditions may never arise. Whether they do or not must depend upon the precise phrase of the preference in a given case and the facts which come to pass. In the event which has befallen, we think that the holders of preferred stock are entitled both to the par value of their stock and to dividends which have not been declared or paid but which would have been declared and paid if there had been surplus or net profits of the corporation wisely applicable to such dividends during the periods when no dividends have been paid. This appears to us to be the sense obvious to the common understanding from the words used. Interpreted in their normal and ordinary, as distinguished from their technical and strained, meaning, this is their signification. The rights of creditors are not involved because in liquidation or winding up all the debts of the corporation must be paid in full. The words of the contract now operative in the facts disclosed are designed to establish the relative rights of holders of preferred stock as between themselves.

This conclusion is in accord with sound legal principles. It is supported by the reasoning of several decisions. *Drewry-Hughes Co.* v. *Throckmorton,* 120 Va. 859. *Johnson* v. *Johnson & Briggs,* 138 Va. 487. *In re New Chinese Antimony Co. Ltd.* [1916] 2 Ch. 115. *In re Springbok Agricultural Estates, Ltd.* [1920] 1 Ch. 563. *In re Dominion Tar & Chemical Co. Ltd.* [1929] 2 Ch. 387. A contrary result appears to have been reached in *Michael* v. *Cayey-Caguas Tobacco Co.* 190 App. Div. (N. Y.) 618, largely upon the authority of *In re W. J. Hall & Co. Ltd.* [1909] 1 Ch. 521, a case not followed in the more recent English decisions just cited.

The words of the contract here under consideration make no distinction, in the event of liquidation or winding up, between the principal amount of the shares and the unpaid dividends accrued thereon. Holders of preferred stock are entitled to be paid both in full without discrimination or preference. The proper course for the defendant corporation to pursue in distribution of assets is to treat all the preferred stock and all unpaid dividends accrued

thereon as the principal and to pay to the shareholder of each share of preferred stock on that basis whatever percentage the assets permit. The holder of each share of preferred stock on which claims to accumulated dividends down to January 1, 1924, have been released by acceptance of one share of second preferred stock, will be entitled to dividends on the principal amount of each share plus unpaid dividends accrued since that date. The plaintiffs as holders of preferred stock on which accumulated dividends down to January 1, 1924, have not been so released, will be entitled to dividends on the principal amount of each share plus all unpaid dividends accrued. This difference between the holders of preferred stock follows from the terms of the agreement of association and articles of organization and the conduct of the several shareholders. Those shareholders who accepted the second preferred stock cannot rightly complain because they elected to take a security which in circumstances of business prosperity might have resulted to their advantage. A decree is to be entered granting relief to the plaintiffs on this footing, with costs. The details of the decree are to be settled by the single justice.

*Decree accordingly.*