**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALBERT D. BOLT,
              *Plaintiff-Appellee,*

v.

MERRIMACK PHARMACEUTICALS, INC.,
              *Defendant-Appellant.*

No. 05-16282

D.C. No.
CV-04-00893-WBS

OPINION

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, Chief District Judge, Presiding

Argued and Submitted
May 18, 2007—San Francisco, California

Filed September 11, 2007

Before: Cynthia Holcomb Hall and Diarmuid F. O'Scannlain,
Circuit Judges, and Irma E. Gonzalez,* Chief District Judge.

Opinion by Judge O'Scannlain

*The Honorable Irma E. Gonzalez, United States Chief District Judge
for the Southern District of California, sitting by designation.

12245

**COUNSEL**

Deborah S. Birnbach, Goodwin Procter LLP, Boston, Massachusetts, argued the cause for the defendant-appellant, and filed briefs; William F. Sheehan, Goodwin Procter LLP, Boston, Massachusetts, and Todd Noonan, Stevens & O'Connell LLP, Sacramento, California, were on the briefs.

William R. Warne, Downey Brand LLP, Sacramento, California, argued the cause for the plaintiff-appellee, and filed a brief; Rhonda Cate Canby, Downey Brand LLP, Sacramento, California, was on the brief.

## OPINION

O'SCANNLAIN, Circuit Judge:

We are called upon to interpret a corporation's articles of organization to decide whether it has an obligation to redeem certain shares of its stock.

I

Albert D. Bolt owns 52,488 shares of Series A Redeemable Preferred Stock ("Series A Stock") issued by Merrimack Pharmaceuticals, Inc. ("Merrimack"), a biotechnology company organized under the laws of Massachusetts. Bolt now wants to redeem those shares.

The relevant redemption provision of Merrimack's Restated Articles of Organization provides:

> At any time from and after December 31, 1997, if the net worth of the Corporation, determined in accordance with generally accepted accounting principles and as shown on the balance sheet of the Corporation as of the end of the fiscal quarter then most recently ended, equals or exceeds five million dollars ($5,000,000.00), then upon the request of the holder of [the Series A] Preferred Stock, the Corporation shall redeem at the Redemption Price any and all shares of [the Series A] Preferred Stock which such holder, by such request, offers to the Corporation for redemption.

The following statement provides a snapshot of Merrimack's balance sheet as of December 31, 2001:

*Assets*

| | |
|---|---|
| Total assets | $11,331,070 |

*Liabilities, Redeemable Convertible Preferred Stock and Stockholders' Deficit*

| | |
|---|---|
| Total liabilities | $ 1,270,230 |

| | |
|---|---|
| Redeemable convertible preferred stock: | |
|   Series A redeemable preferred stock | $    548,380 |
|   Series B convertible preferred stock | $11,915,267 |
|     Total redeemable convertible preferred stock | $12,463,647 |
| Total stockholders' deficit | ($  2,402,807)[1] |
| Total liabilities, redeemable convertible preferred stock, and stockholders' deficit | $11,331,070 |

PricewaterhouseCoopers LLP audited Merrimack's financial statements, and opined that Merrimack's balance sheet referred to above "presents fairly, in all material respects, the financial position of Merrimack Pharmaceuticals, Inc. at December 31, 2001 in conformity with accounting principles generally accepted in the United States of America."

During 2001, Merrimack had issued 3,315,201 shares of Series B Redeemable Convertible Preferred Stock ("Series B Stock") with a book value of $11,915,267. The Series B Stock is redeemable at the option of the holder upon a "deemed liquidation," defined as (1) a merger with another company, after which the Merrimack stockholders would no longer hold a majority of the voting power, or (2) the sale of Merrimack's business assets. The Series B Stock appears in the "mezzanine" of the balance sheet, between the liabilities section and the stockholders' deficit (equity) section. *See* David R. Herwitz & Matthew J. Barrett, *Accounting for Lawyers* 505 (4th ed. 2006) (explaining that the "section between liabilities and equity on the balance sheet" is commonly referred to as the "mezzanine").

On April 11, 2001, and again on March 28, 2002, Bolt sent written requests to Merrimack for the redemption of his shares of Series A Stock. In a letter dated June 13, 2002, Merrimack rejected Bolt's demands for redemption. Bolt filed suit

---

[1]We employ parentheses throughout the disposition to represent a negative number.

in federal district court seeking a declaratory judgment that Merrimack's net worth exceeded $5 million as of December 31, 2001. On cross-motions for summary judgment, the district court granted summary judgment for Bolt, concluding that Merrimack's net worth exceeded $5 million as of that date.

Merrimack timely appealed.

## II

We are faced with the task of interpreting Merrimack's Restated Articles of Organization to determine if it indeed has an obligation to redeem the Series A Stock held by Bolt. The dispositive issue, of course, is whether Merrimack's net worth, determined in accordance with generally accepted accounting principles ("GAAP") and as shown on the balance sheet, equaled or exceeded $5 million as of December 31, 2001. The district court held that it did. We agree.

## A

[1] We must first determine the meaning of the term "net worth," the threshold yardstick to determine whether Merrimack has an obligation to redeem the Series A Stock as Bolt requests. Merrimack's Restated Articles of Organization fail to define that term. Nor does GAAP define that term. And no item on Merrimack's balance sheet is specifically labeled "net worth."

[2] Merrimack is organized under Massachusetts law, and therefore we apply that state's body of law here. *See Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586, 614 (1947). Moreover, because articles of organization are contractual in nature, *see Willson v. Laconia Car Co.*, 176 N.E. 182, 184 (Mass. 1931), we look to Massachusetts general contract principles. "Where the language of a contract is not ambiguous," we are instructed to give words "their plain

meaning, or their well established meaning." *City of Haverhill v. George Brox, Inc.*, 716 N.E.2d 138, 141 (Mass. App. Ct. 1999) (internal citations omitted); *see also Erhard v. F.W. Woolworth Co.*, 372 N.E.2d 1277, 1279 (Mass. 1978); *Freelander v. G. & K. Realty Corp.*, 258 N.E.2d 786, 788 (Mass. 1970); Restatement (Second) of Contracts § 202(3) (1981).

**[3]** The common and well-established meaning of the term "net worth" is the difference between a corporation's total assets and its total liabilities.[2] Merrimack's total assets and total liabilities, as shown on its December 31, 2001 balance sheet, equal $11,331,070 and $1,270,230, respectively. Accordingly, employing the well-established meaning, Merrimack's net worth equals $10,060,840, well in excess of the $5 million threshold set by the Restated Articles of Organization.

Merrimack suggests that net worth is sometimes referred to as stockholders' equity.[3] This reference is often accurate because a balance sheet generally involves only three basic accounting elements—assets, liabilities, and equity—and equity by definition equals the residual interest in the assets after subtracting liabilities.[4] Yet, under this reasoning, Merrimack's net worth would still exceed $5 million.

---

[2]*See, e.g.*, Herwitz & Barrett, *supra*, at 3 ("The difference between what a business owns—its *assets*—and what it owes—its *liabilities*—represents its *net worth*, which accountants sometimes refer to as *equity*."); Black's Law Dictionary (4th ed. 2004) (defining net worth as "[a] measure of one's wealth, usu. calculated as the excess of total assets over total liabilities"); *see also Am. Pac. Concrete Pipe Co., Inc. v. N.L.R.B.*, 788 F.2d 586, 590-91 (9th Cir. 1986) (calculating net worth for purposes of the Equal Access to Justice Act by "subtracting total liabilities from total assets"); *Overnite Transp. Co. v. Comm'r of Revenue*, 764 N.E.2d 363, 365 n.1 (Mass. App. Ct. 2002) (defining net worth for purposes of Massachusetts's tax revenue laws as "the book value of [the company's] total assets less its liabilities").

[3]*See, e.g.*, *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1064 (9th Cir. 2004) (equating net worth with shareholders' equity); *Nelson v. Serwold*, 687 F.2d 278, 280 (9th Cir. 1982) (same); Herwitz & Barrett, *supra*, at 3.

[4]Elements of Financial Statements, Statement of Fin. Accounting Concepts No. 6 § 49, at 21 (Fin. Accounting Standards Bd. 1985) ("Equity or

**[4]** But Merrimack goes further, arguing that the definition of net worth for purposes of its Restated Articles of Organization equals *only* Merrimack's total stockholders' deficit of $2,402,807, excluding Merrimack's total redeemable convertible preferred stock of $12,463,647.[5] Merrimack contends that limiting the meaning of net worth to this amount is appropriate here because the Restated Articles of Organization point to net worth "as shown on the balance sheet" and call for no further calculations. While this argument has surface appeal, we ultimately are unpersuaded. The Restated Articles of Organization indeed point us to "net worth . . . *as shown* on the balance sheet." (emphasis added.) But there is no item so labeled on the balance sheet involved here. Thus, such an interpretation of net worth is "shown" on the balance sheet only to the extent that we accept an additional premise necessary to connect it to the net worth reference in the Restated Articles of Organization. Either we accept Merrimack's premise that net worth is limited to total stockholders' equity (deficit) on the balance sheet, or we accept Bolt's premise that net worth is commonly defined as the difference between total assets and liabilities. Regrettably, the Restated Articles of Organization provide no further guidance as to the proper definition of the term. Given the common and well-established meaning of the term "net worth" as the difference between total assets and total liabilities, we cannot accept that the document reflects an intentionally narrower, more nuanced definition of that term that would equal only total stockholders' equity (deficit) simply because it employed the phrase "as

---

net assets is the residual interest in the assets of an entity that remains after deducting its liabilities.") [hereinafter "Concept No. 6"]; *id.* § 50, at 21 ("The equity or net assets of both a business enterprise and a not-for-profit organization is the difference between the entity's assets and its liabilities.").

[5]We agree with the district court and likewise reject Merrimack's renewed attempt on appeal to tie Bolt's hands to this limited definition of net worth based on allegations in his complaint.

shown on the balance sheet." We therefore decline to adopt Merrimack's definition here.

## B

Nevertheless, our analysis does not end with our construction of the term "net worth." The Restated Articles of Organization specify that the balance sheet relied upon must be determined in accordance with GAAP.[6] If the balance sheet

---

[6]Unfortunately, GAAP is not found in a single source. *See* Herwitz & Barrett, *supra*, at 182. Instead, in the United States, GAAP consists of a hodgepodge of accounting sources, which find their respective places in the hierarchical structure established by the American Institute of Certified Public Accountants ("AICPA"). *See* The Meaning of "Present Fairly in Conformity with Generally Accepted Accounting Principles" in the Independent Auditor's Report, Statement on Auditing Standards No. 69 § 7 (Am. Inst. of Certified Pub. Accountants 1992). There are five categories in the GAAP hierarchy. Officially established accounting principles, referred to as Category (a) authority, are the highest level and include the Financial Accounting Standards Board ("FASB") Statements of Financial Accounting Standards and Interpretations, Accounting Principles Board ("APB") Opinions, and AICPA Accounting Research Bulletins. *Id.* § 10. Moreover, Securities Exchange Commission ("SEC") rules and interpretative releases take an authoritative weight similar to Category (a) authority for companies registered with the SEC. Category (b) authority, the next highest level, consists of FASB Technical Bulletins and, if cleared by FASB, AICPA Industry Audit and Accounting Guides and AICPA Statements of Position. *Id.* The third level of authority, Category (c), consists of AICPA Accounting Standards Executive Committee Practice Bulletins that have been cleared by FASB and consensus positions of the FASB Emerging Issue Task Force. Category (d), the fourth level of authority, consists of AICPA accounting interpretations and implementation guides published by the FASB staff, and practices that are widely recognized and prevalent either generally or in the industry. *Id.* In the absence of established accounting principles, auditors may consider accounting literature in the fifth and final level of authority, which includes FASB Statements of Financial Accounting Concepts; APB Statements; AICPA Issues Papers; International Accounting Standards of the International Accounting Standards Committee ("IASC"); Governmental Accounting Standards Board ("GASB") Statements, Interpretations, and Technical Bulletins; pronouncements of other professional associations or regulatory agencies; AICPA Technical Practice Aids; and accounting textbooks, handbooks, and articles. *Id.* § 11.

incorrectly reports total assets or total liabilities under GAAP, our determination of net worth necessarily would be affected.

To determine whether the balance sheet is prepared in accordance with GAAP, we do not take off our judicial black robes and reach for the accountant's green eyeshade. Rather, because " 'generally accepted accounting principles' are far from being a canonical set of rules that will ensure identical accounting treatment of identical transactions[, and] tolerate a range of 'reasonable' treatments," we generally defer to the professional judgment of the accountant who audited or prepared the financial statements, unless a GAAP authority *demands* a contrary accounting treatment. *See Thor Power Tool Co. v. Comm'r*, 439 U.S. 522, 544 (1979); *see also United States v. Basin Elec. Power Coop.*, 248 F.3d 781, 798 (8th Cir. 2001) (en banc); *Godchaux v. Conveying Techniques, Inc.*, 846 F.2d 306, 315 (5th Cir. 1998).

1

Merrimack argues on appeal that the Series B Stock, which is presented in the mezzanine section of the balance sheet, is akin to a liability under GAAP authorities. Of course, if the Series B Stock were considered a liability, Merrimack's net worth would not equal or exceed $5 million. But Merrimack's balance sheet does not show the Series B Stock to be part of total liabilities. Nor do we believe that GAAP requires such accounting classification.

a

First, Merrimack claims to find support in Regulation S-X of the SEC, which requires certain stock to be presented on the balance sheet under the caption "redeemable preferred stock" and expressly prohibits including such stock under a general caption "stockholders' equity" or combined in a total with non-redeemable preferred stocks, common stocks, or other stockholders' equity. Regulation S-X, 17 C.F.R.

§ 210.5-02. That regulation applies to any class of stock with the following characteristics:

> (1) it is redeemable at a fixed or determinable price on a fixed or determinable date or dates, whether by operation of a sinking fund or otherwise; (2) it is redeemable at the option of the holder; or (3) *it has conditions for redemption which are not solely within the control of the issuer*, such as stocks which must be redeemed out of future earnings. Amounts attributable to preferred stock which is not redeemable or is redeemable solely at the option of the issuer shall be included under § 210.5-02.29 unless it meets one or more of the above criteria.

*Id.* § 210.5-02.28(a) (emphasis added).

The parties do not dispute on appeal that Merrimack's Series B Stock falls within the scope of Regulation S-X and therefore is presented properly in the mezzanine section of the balance sheet. Merrimack, however, places great weight on the fact that Regulation S-X requires such stock to be presented "outside" of stockholders' equity, implicitly suggesting, Merrimack urges, that it should be considered akin to a liability for purposes of determining net worth.

**[5]** In our view, Merrimack reads too much into Regulation S-X, which only requires that the Series B stock be *presented* in a separate caption in the mezzanine section of the balance sheet, not that such stock be *classified* as part of total liabilities. Indeed, in Accounting Series Release No. 268, the SEC expressly emphasized that these "rules are intended to highlight the future cash obligations attached to redeemable preferred stock through appropriate balance sheet *presentation* and footnote disclosure. *They do not attempt to deal with the conceptual question of whether such security is a liability*." Presentation in Financial Statements of Redeemable Preferred Stock, Accounting Series Release No. 268, [1937-1982 Trans-

fer Binder] Fed. Sec. L. Rep. (CCH) ¶ 72,290, at 62,751 (July 27, 1979) (emphasis added). Accordingly, we are not persuaded that Regulation S-X requires the Series B Stock to be classified as part of total liabilities on the balance sheet for purposes of calculating net worth. By reporting the Series B Stock in the mezzanine section, the balance sheet properly followed the presentation requirements set forth in Regulation S-X, which forms part of GAAP.

b

**[6]** Second, both parties claim to draw support from Accounting Standards No. 150. *See* Accounting for Certain Financial Instruments with Characteristics of both Liabilities and Equity, Statement of Fin. Accounting Standards No. 150 (Fin. Accounting Standards Bd. 2003) [hereinafter "Statement No. 150"]. We recognize, as does Merrimack, that Statement No. 150 was not effective until after the balance sheet involved in this case was prepared. However, we believe that this statement offers helpful guidance that confirms our conclusion. Statement No. 150 requires that a mandatorily redeemable financial instrument, defined as a financial instrument that "embodies an *unconditional* obligation requiring the issuer to redeem the instrument by transferring its assets at a specified or determinable date (or dates) or upon an event certain to occur," be reclassified as a liability. *Id.* § 9, at 10 (emphasis added). Even if Statement No. 150 applied in this case, the parties agree that it would not require the Series B Stock to be classified as a liability because redemption of that stock is *conditional* and expressly beyond the statement's scope. *See id.* at 5. A redeemable preferred stock conditioned "upon an event not certain to occur becomes mandatorily redeemable—*and, therefore, becomes a liability*—if that event occurs, the condition is resolved, or the event becomes certain to occur." *Id.* § 10, at 10 (emphasis added). Thus, while not applicable to the balance sheet at issue in this case, Statement No. 150's requirement that conditionally redeemable stock be classified as a liability upon the resolution of the

conditional event suggests that under GAAP such stock, like the Series B Stock here, should not be classified as a liability before that event.

c

**[7]** Finally, we have two additional GAAP authorities to consider. Merrimack points us to International Accounting Standards No. 32. *See* Financial Instruments: Disclosure and Presentation, International Accounting Standards No. 32 (Int'l Accounting Standards Bd. amended 2004) [hereinafter "International Standard No. 32"]. That standard provides that *conditionally* redeemable preferred stock, like the Series B Stock in this case, should be classified as a liability.[7] While International Standard No. 32 is on point, we do not believe that it compels Merrimack to restate the Series B Stock, which is presented in the mezzanine section of the balance sheet, as part of total liabilities. International Accounting Standards fall on the lowest rung of the GAAP hierarchy in the United States. *See supra* n.6. Moreover, FASB, the organization charged with establishing GAAP in the United States, has expressly declined to adopt International Standard No. 32's position with respect to classifying conditionally redeemable preferred stock as a liability.[8]

---

[7]*See id.* § 18(a) ("[A] preference share that provides for mandatory redemption by the issuer for a fixed or determinable amount at a fixed or determinable future date, *or gives the holder a right to require the issuer to redeem the instrument at or after a particular date for a fixed or determinable amount, is a financial liability*." (emphasis added)); *id.* § 19(b) ("[A] contractual obligation that is conditional on a counterparty exercising its right to redeem is a financial liability because the entity does not have the unconditional right to avoid delivering cash or another financial asset.").

[8]*See* Statement No. 150, *supra*, § B79, at 53 ("IAS 32 requires the same accounting for conditional redeemable instruments as for mandatorily redeemable instruments. *This Statement does not go that far.* The Board acknowledges that the conditional obligation embedded in such shares may, if accounted for separately, meet the definition of a liability; however, the accounting for such compound instruments is beyond the scope of this Statement." (emphasis added)).

**[8]** The parties also direct us to FASB's Concept No. 6. But we do not believe the conceptual definitions found therein require a conclusion that the Series B Stock must be classified as part of total liabilities, contrary to the presentation on Merrimack's balance sheet. Concept No. 6 defines "liabilities" as "probable future sacrifices of economic benefits arising from present obligations of a particular entity to transfer assets or provide services to other entities in the future as a result of past transactions or events," *id.* § 35, at 18, and "equity" as "the residual interest in the assets of an entity that remains after deducting its liabilities," *id.* § 49, at 21. Moreover, and more importantly, Concept No. 6 recognizes the conceptual difficulties with classifying certain hybrid securities like the Series B Stock at the nub of this case,[9] and instructs in such cases that the conceptual definitions are the starting point and "provide a basis for assessing, for example, the extent to which a particular application meets the qualitative characteristic of *representational faithfulness, which includes the notion of reporting economic substance rather than legal form.*" *Id.* § 59, at 24 (emphasis added).

Merrimack argues that the Series B Stock should not be considered equity pursuant to Concept No. 6 because that stock is not a "residual interest." We appreciate, as do the parties, that the Series B Stock has a number of hybrid characteristics: Series B stockholders have (1) a right to vote, together with the common stock as a single class, on all actions to be taken by the stockholders; (2) a right to elect one board member; (3) a dividend of four percent per annum of purchase

---

[9]*Id.* § 55, at 23-24 ("Although the line between equity and liabilities is clear in concept, it may be obscured in practice. Applying the definitions to particular situations may involve practical problems because several kinds of securities issued by business enterprises seem to have characteristics of both liabilities and equity in varying degrees or because the names given some securities may not accurately describe their essential characteristics. . . . Preferred stock [for example] often has both debt and equity characteristics, and some preferred stocks may effectively have maturity amounts and dates at which they must be redeemed for cash.").

price; (4) a liquidation preference before common stock, but after debts and liabilities and the Series A Stock preference; (5) a cash redemption right upon a "deemed liquidation" and at the election of the holder; (6) a right to convert such stock into common stock at any time according to a specified formula; (7) covenants and restrictions on certain actions by Merrimack; and (8) a preemptive right. However, while recognizing that the Series B Stock does not fit neatly into either the definition of liabilities *or* equity under Concept No. 6, we are unpersuaded that Merrimack's balance sheet, by not classifying that stock as part of total liabilities, is contrary to GAAP.

2

**[9]** In sum, finding no GAAP authority that requires classifying Merrimack's Series B Stock as part of total liabilities, we defer to PricewaterhouseCooper's conclusion that Merrimack's balance sheet "presents fairly, in all material respects, the financial position of Merrimack Pharmaceuticals, Inc. at December 31, 2001 in conformity with accounting principles generally accepted in the United States of America." We therefore agree with the district court's conclusion that Merrimack's balance sheet as of December 31, 2001 was determined according to GAAP.[10]

---

[10]Merrimack's argument that the district court's decision must be interpreted to have concluded otherwise is unpersuasive. Merrimack selectively alters a quotation from the decision to assert that the district court ruled expressly, in direct conflict with Regulation S-X, that Merrimack's "argument that the Series B shares should be classified outside [equity] is an argument against generally accepted accounting principles." (alteration in brief) But the district court actually stated that the "Series B shares *must be classified as either an asset, a liability, or equity*. Defendant's argument that the Series B shares should be classified outside *those categories* is an argument against generally accepted accounting principles." (emphasis added.) Because FASB has expressly declined to expand on those three accounting elements on the balance sheet, Merrimack missteps by latching onto this statement to allege that the district court concluded that the bal-

III

**[10]** Merrimack has an obligation to redeem Bolt's Series A Stock if its net worth equals or exceeds $5 million. Because we conclude that the term "net worth" for purposes of the Restated Articles of Organization should be given its well-

---

ance sheet was not prepared in accordance with GAAP. *See* Statement No. 150, *supra*, §§ B56 & B57, at 47 ("Certain financial instruments were presented between the liabilities section and the equity section of the statement of financial position before the issuance of this Statement. *Because Concepts Statement 6 does not accommodate classification of items outside the elements of assets, liabilities, and equity, developing a model that would permit that practice would require the Board to define a new element of financial statements. The Board elected not to pursue that course of action, in part because, among other concerns, adding another element would set an undesirable precedent of adding elements whenever new instruments are created that are difficult to classify.* The Board instead elected to develop an approach that would address the issues related to determining the appropriate classification of financial instruments with characteristics of liabilities, equity, or both. . . ." (emphasis added)).

Nor is Merrimack's argument that the district court afforded no deference to PricewaterhouseCoopers, its auditors, of any moment. PricewaterhouseCoopers simply certified that the balance sheet—which reflects total assets of $11,331,070, total liabilities of $1,270,230, total redeemable convertible preferred stock of $12,463,647, and total shareholders' deficit of ($2,402,807)—presents Merrimack's financial position as of December 31, 2001 fairly in all material respects in accordance with GAAP. Even in a subsequent declaration submitted for purposes of this lawsuit, PricewaterhouseCoopers never opined that net worth equaled stockholders' equity or that the Series B Stock should be classified as a liability, but simply reaffirmed that "the classification of the Series B convertible preferred stock outside of permanent equity, or stockholder's [sic] equity (deficit) was presented in conformance with GAAP." As such, contrary to Merrimack's argument, we have no opinion by PricewaterhouseCoopers that net worth equals stockholders' equity to which to defer. Accordingly, we defer only to PricewaterhouseCoopers's conclusions that the balance sheet presents fairly in all material respects Merrimack's financial position as of December 31, 2001, in conformity with GAAP, and that the Series B Stock was properly presented outside of stockholders' equity in compliance with GAAP.

established meaning as the difference between total assets and total liabilities, and because Merrimack's total assets and total liabilities equaled $11,331,070 and $1,270,230, respectively, as shown on the December 31, 2001 balance sheet calculated in conformity with GAAP, Merrimack's net worth exceeded $5 million. Accordingly, the district court's grant of summary judgment in favor of Bolt is

**AFFIRMED.**